[Crim. No. 3563.   First Dist., Div. One.   Sept. 28, 1959.]

THE PEOPLE, Respondent, v. FRED TAPIA, Appellant.

Samuel D. O'Brien, appointed by District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Louis P. Bergna, District Attorney (Santa Clara), and Margaret V. Morten, Chief Trial Deputy District Attorney, for Respondent.

WOOD (Fred B.), J.—Defendant-appellant was convicted of two violations of section 11500 of the Health and Safety Code: sales of marijuana on January 9 and 13, 1958. He does not question the sufficiency of the evidence to support the verdict. He does claim that prejudicial error occurred during the trial. But first there is a question as to the timeliness of the appeal.

In its brief filed herein, respondent called attention to the fact that "[o]n the face of the record . . . it appears that notice of appeal was filed on June 4, while the judgment appealed from was entered on May 23 [1958]. We, therefore feel compelled to point this fact out so that the jurisdiction of this court can be properly established . . ."

Soon after the filing of respondent's brief appellant made and filed an affidavit in which he stated the following significant facts: He was represented by court appointed counsel up to the time of sentencing and was without funds to procure representation on appeal.* He was unable to obtain an interview with the prison officials at Vacaville Reception Center to obtain information concerning the procedure of appealing and requested the information from the attorney who had represented him during the trial. That attorney on May 28, 1958, mailed him the requested information, which was received at Vacaville Reception Center on May 29, 1958, but was not delivered by the prison officials to appellant until June 2, 1958. On June 2, upon receipt of this informa-

---

*Later, counsel was appointed by this court to represent appellant upon this appeal.

tion appellant wrote and mailed this notice of appeal to the superior court, which notice was actually filed in that court on June 4, 1958.

Attached to the affidavit, as a part of it, is the letter from his former attorney, giving him the requested information, also the face of the envelope in which it came, postmarked "May 28, 1958," at the place of mailing, and an interdepartment route slip of the California Medical Facility at Vacaville showing that the letter was received at the facility on May 29, 1958.

Appellant states in his affidavit that his notice of appeal would have been timely filed had the prison officials at the Vacaville Facility promptly delivered that letter to him.

No counter evidence has been tendered. It is undisputed, therefore, that the information needed by appellant to make his appeal was received at the medical facility on the sixth day (a Thursday) but not delivered to him until the tenth and last day (the following Monday) of his ten-day appeal period and that he promptly (on the very day he received the needed information) wrote, signed and mailed his notice of appeal.

We find that appellant made a constructive filing within the prescribed time limit and satisfied the jurisdictional requirement within the rule enunciated in *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], and later decisions interpreting and applying that rule. (See *People* v. *Frye,* 117 Cal. App.2d 101, 102 [255 P.2d 105]; *People* v. *Calloway,* 127 Cal.App.2d 504, 505 [274 P.2d 497]; *People* v. *Head,* 46 Cal.2d 886 [299 P.2d 872]; *In re Gonsalves,* 48 Cal.2d 638, 642 [311 P.2d 483].)

Appellant complains of the court's refusal to order the production of a certain police report. Undercover agent Valdez, who made both purchases, testified that the package bought on the 9th of January he delivered to Officers Mc-Hugh and Bettencourt at Empire and 19th Streets, that same evening.

Bettencourt took the stand for the People and testified that he received this package from Valdez at 19th and Empire Streets, January 9, at approximately 11 p. m., kept it in his own possession until later that evening when he placed it in a locked container in the Detective Bureau, and then on January 14 turned it over to Inspector Savage of the State Narcotic Bureau.

Upon cross-examination defendant went outside the testi-

mony given on direct, asking a number of questions concerning observations pertaining to the sale transaction which Bettencourt had made earlier in the evening of January 9 at a different location, near 13th and Empire Streets, thus making Bettencourt defendant's own witness. (Code Civ. Proc., § 2048. See also 27 Cal.Jur. 98-101, Witnesses, § 77; 58 Am.Jur. 351-353, Witnesses, § 631, and 440-441, Witnesses, § 794.) One of the questions asked was when did he see a person whom he thought to be the defendant? He answered it was about 9:30, 9:20 or 9:30, and later on at about 10:30 in the evening. Asked if he made a written memorandum of it all, Bettencourt said he wrote a report. In response to further questions he said he did not have the report with him. He saw it that morning before coming to testify, to refresh his recollection. He did not recall whether the report showed the time when he saw the person he thought was the defendant. The report was now at the district attorney's office. Defendant demanded its production. The prosecution refused to produce that report alone by itself but did offer to stipulate that the whole file, containing ''all of these notes'' (presumably those of the other officers also) be admitted in evidence. Defendant's counsel refused the offer, explaining he only asked for Bettencourt's report, from which the witness had refreshed his recollection.

The court refused this demand ''because the witness did not use that report in the courtroom to refresh his memory.'' That was a sound ruling under section 2047 of the Code of Civil Procedure. (*People* v. *Gallardo,* 41 Cal.2d 57, 66-68 [257 P.2d 29].) Section 2047, of course, has to do with the duty of exhibiting to the ''adverse'' party a memorandum used by one's own witness, while on the witness stand, to refresh his recollection. Here, defendant having made Bettencourt his own witness, the situation envisaged by section 2047 did not obtain and the mandate of that section did not apply in defendant's favor. Moreover, defendant was not seeking production of the memorandum for the aid it might be to his own witness (Bettencourt) in refreshing his recollection. Instead, he sought it for the purpose of impeachment. His counsel said in response to the above quoted words of the court: ''It seems to me that we are entitled to use it if he has used it to refresh his recollection today, and I think Your Honor should so order the District Attorney to produce it.'' We see in that record no sound legal basis for such a demand. The court's ruling was correct.

Continuing his cross-examination of the witness, defendant brought out the fact that at the preliminary examination Bettencourt testified he saw the defendant, upon the second occasion, on the evening of January 9, "somewhere around 10:00 o'clock." In explanation, Bettencourt said he had not, at the preliminary, refreshed his memory; he was then going on the best of his recollection, but that on this occasion (at the trial) he had refreshed his recollection. Asked "what does your report say?" he replied, "I don't recall." (No objection to this line of testimony was interposed by the prosecution.)

Defendant assigns these inconsistent statements of Bettencourt's as additional grounds for his demand for inspection of Bettencourt's report. This presents a question we need not decide because he did not renew his motion for production of the report. Accordingly, it is immaterial whether Bettencourt was still defendant's witness or had again become the prosecution's witness. The question of error in the ruling, when demand for production was made, necessarily turns upon what the maker of the ruling at that time had before him for consideration and determination, not something that may have developed at a later stage of the trial.

Still later during the cross-examination defendant elicited from Bettencourt the statement that his report shows that upon that second occasion he saw the defendant at approximately 10:30. Again, defendant failed to move for inspection or production of the report.

The variance in the time element (10 or 10:30) became significant later in the trial when it developed that the defendant had become involved in a traffic accident sometime between 9:45 and 10 o'clock of that same evening at a different location. Again there was no renewal of request for the Bettencourt report.

■ Appellant makes the further contention that the prosecution committed prejudicial misconduct. He claims that the prosecution's offer to produce the whole file above mentioned was made not in good faith but for the purpose of maligning and prejudicing the defendant in the eyes of the jury. Further, in the closing argument the prosecution stated: "Ladies and Gentlemen, in reply to . . . [defense counsel's] argument, first, I would like to mention the last point he mentioned, the withholding of the evidence. I trust you will recall that we did not intend to withhold any evidence. We made the offer to produce not only the notes of Mr. Bettencourt, the

report of Mr. Bettencourt and Mr. Bishop, but the whole file on the whole case, and the request was refused. It was the defendant who didn't dare let you see the whole file of the whole case.'' These remarks were improper. The entire police records were obviously not admissible. The offer to produce the entire file in response to the request for the notes and report prepared by Officer Bettencourt was objectionable. But defendant interposed no objection, made no assignment of misconduct, and failed to request that the jury be admonished and instructed to disregard the offer and the remarks. We believe that such admonition would have erased any harmful effect of the asserted misconduct. It is too late now to object. (*People* v. *Wein*, 50 Cal.2d 383, 396 [326 P.2d 457]; *People* v. *Hampton*, 47 Cal.2d 239, 240 [302 P.2d 300].)

The judgment and order appealed from are affirmed.

Bray, P. J., and Tobriner, J., concurred.