[Crim. No. 2935.    Third Dist.    Jan. 5, 1960.]

THE PEOPLE, Respondent, v. COY JAMES WILLMON et al., Appellants.

Coy James Willmon, in pro. per., and Charles J. Miller, under appointment by the District Court of Appeal, for Appellants.

Stanley Mosk, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

PEEK, J.—Defendant Craig and his codefendant Willmon appeal from a judgment entered pursuant to a verdict of the jury finding them guilty of grand theft and burglary. Willmon's appeal appears to have been abandoned and hence must be dismissed. We therefore have confined this opinion solely to the contentions raised in the Craig appeal.

At the outset of its brief, respondent points out that the judgment appealed from was filed on October 3, 1958, and that the notice of appeal was entered by the clerk on October 14. Respondent feels compelled to so state in order that ". . . the jurisdiction of this court can be properly established . . ." The record further shows that following the filing of said notice, and pursuant to a request by Craig, this court appointed counsel to represent him on appeal; that following the filing of respondent's brief, Craig filed with this court an affidavit wherein he avers that on October 10, 1958, while in custody at the California Medical Facility at Vacaville, ". . . I went to the legal clerk's office at the Reception Guidance Center . . . and I wrote a letter to the County Clerk of Sutter County stating that I wished to appeal my case . . . I handed the letter to the legal clerk the morning of October 10, 1958, and he said he would mail it out right away. When the letter was in fact mailed I do not know. If it had been mailed on the 10th, it would have reached the Sutter County Clerk on or before October 13, 1958." No counter-affidavit or other evidence in opposition has been tendered by the respondent.

This court is thus presented with a situation not wholly unlike that in *People* v. *Tapia,* 174 Cal.App.2d 52 [344 P.2d 33]. There it was held under similar circumstances

that ". . . appellant made a constructive filing within the prescribed time limit and satisfied the jurisdictional requirement within the rule enunciated in *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], and later decisions interpreting and applying that rule. [Citing cases.]" Under the facts disclosed here we conclude, as did the court in the Tapia case, that since it is undisputed that appellant's notice of appeal was delivered to the legal clerk at the facility in ample time to have been delivered to the county clerk, the appellant made a constructive filing within the time prescribed by rule 31 of Rules on Appeal and ". . . satisfied the jurisdictional requirement as contemplated by law." (*People* v. *Slobodion, supra,* p. 368.)

Subsequent to his assignment to represent the appellant, counsel informed the court that he had examined the record, particularly in light of Craig's contentions that the personal property alleged to have been feloniously taken was obtained by the police unlawfully and that the court erroneously instructed the jury, and found no merit in such contentions. Our independent examination of the record compels a like conclusion.

On the night of July 23, 1958, one Lester Rose left his locked airplane at the Yuba City airport. Inside the plane were clothing, blankets, a portable radio and various items of fishing tackle. The following morning Rose found that the door handle had been forced, the plane entered and the above-mentioned articles taken. He reported these facts to the Yuba City police department. On the same night one Robert C. Thompson left a large number of tools in a shed on a ranch of which he was the superintendent. The next morning the tools, valued in excess of $200, were missing. He, like Rose, reported the theft to the Yuba City police. The information supplied by Rose and Thompson was given to sheriff's officers who had previously been advised by one Mrs. Dauzat, the operator of a motel, that twice during the night in question she had observed two men carrying boxes into one of the motel units. This unit was rented to a sister-in-law of the defendant Craig. Mrs. Dauzat's testimony was that she had observed a Chevrolet owned by the defendant's sister-in-law enter the motel grounds with its lights off; that two men alighted from the vehicle and carried something which sounded like tools into the motel; that thereafter the two men came out of the unit, entered the vehicle and drove off, again without lights; that approximately 45 minutes later she observed the car, still

without lights, return to the motel, again stop in front of the same unit, and again two men carried something inside. These facts she mentioned to her husband the following morning, and he in turn reported the incident to the sheriff's office. Following this report the officers proceeded to the motel where they were again informed of Mrs. Dauzat's observations of the night before and proceeded to the apartment in question. When they knocked at the door they asked for the defendant Craig and were told he was still in bed but to ''come in.'' In the apartment at that time were Craig, his codefendant Willmon, his sister-in-law and a Will Willmon. The officers observed a black and white bag which was full of tools, and saw additional tools lying alongside the bag. In response to a question as to the ownership of the tools, defendant Craig stated that he owned them, having bought them from a ''wino'' in Marysville; however he was unable to identify the seller. Willmon, in answer to a like question, stated that he owned the radio, having procured it in Brawley for the sum of $16. Upon leaving the motel, and in response to a question from one of the officers, defendant Craig stated that he had operated the Chevrolet car the previous evening and that the officers had his permission to ''go ahead'' and search the vehicle. During the course of the search a web belt which had been removed from the airplane was found. Craig stated he had obtained it in Marysville but could not remember where. Later that same morning the officers returned to the motel with Rose who identified several of the articles as having been taken from his airplane the previous night. The tools which were removed to the sheriff's office were identified by Thompson as his property. During the trial Craig testified that he did not steal the tools from the ranch, nor did he visit the airport, and stated that he had lied to the officers when he said that he had procured the stolen tools from a ''wino'' in Marysville. However he did not explain how the stolen property had found its way into his sister-in-law's apartment. Willmon testified that he had previously been employed at the ranch and was familiar with the tools. He further testified that the statements he made to the officer concerning the ownership of the radio were untrue, and that he did not know why he had done so.

It is Craig's first contention that the trial court committed error in admitting into evidence the articles alleged to have been stolen, since these articles had been taken from the motel apartment without the aid of a warrant, and thus the burden was upon the prosecution to establish justification for the

search and seizure and the arrest. In this connection he argues that the prosecution did not establish a basis for the admissibility of such evidence, and that the premature admission thereof in effect foreclosed a consideration of the issue of search and seizure. While it may be true that at the time the prosecution offered such evidence the objection of defendant's counsel was proper and should have been sustained, nevertheless the record shows without contradiction that subsequently the officers testified to the occurrence at the Craig apartment as previously summarized, from which testimony it could be found that there was a consent to the search.

When a defendant consents to a search his constitutional rights are not violated, and any search and taking of evidence pursuant to such consent is not unreasonable. (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852].) Here the record shows without contradiction that the evidence admitted over defendant's objection was obtained in the course of a search to which the occupants of the premises freely and voluntarily consented. Hence such evidence was admissible as against the defendants.

The defendant's further contention is that the trial court committed prejudicial error when it instructed the jury in the manner by which it should return a verdict to the offenses charged. The portion of the rather lengthy and comprehensive instruction given by the trial court relied upon by the defendant is taken completely out of context. When the instruction is read as a whole, it cannot be said that defendant was prejudiced thereby.

The appeal of the defendant Willmon is dismissed, and the judgment of conviction of defendant Craig is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.