[Crim. No. 3840. First Dist., Div. One. June 12, 1961.]

## THE PEOPLE, Respondent, v. LEE SPENCER, Appellant.

14

James B. Atkin, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Derald E. Granberg, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Convicted of selling narcotics in violation of section 11501 of the Health and Safety Code, appellant urges on appeal the defense of entrapment. We have concluded, however, that the evidence utterly failed to establish an entrapment as a matter of law and that, in any event, appellant waived such a defense by his failure to raise it at the trial. We find no merit in respondent's assertion that this court lacks jurisdiction to consider the substantive issues of this appeal because "appellant failed to comply with the requirement that his notice of appeal be filed within ten days of the rendition of judgment."

On September 3, 1959, two Oakland police officers, who were investigating a case involving receipt of stolen property, stopped Willie Mae Thomas for questioning concerning that case. They found her smoking a marijuana cigarette. The officers took her to police headquarters where they elicited her promise to assist them in making narcotics arrests.

The testimony conflicts as to whether the officers offered Willie Mae any inducement that they would not prosecute her for possession of marijuana in consideration of her aid. Willie Mae asserted that Officer Hilliard asked her if she knew appellant and whether she could buy narcotics from him; that she

answered, "Yes"; that she then agreed to act as an agent for them; that she "guessed" they would not charge her because they wanted her to act as an agent; that she agreed "in order not to be prosecuted. . . ." Officer Hilliard denied telling Willie Mae, or hearing anyone else tell her, that "if she assisted and acted as an agent" they "would not press the charge"; rather he asserted that he told Willie Mae before he asked for her aid that she "was not going to be charged."

On September 4th two police officers picked up Willie Mae at about 8 or 8:30 p.m. and took her, first, to the Oakland City Hall where a policewoman searched her, and, then, to the Police and Vice Control office. They likewise searched her car and gave her one ten and two five-dollar bills from which they had copied the serial numbers and on which they had sprinkled a yellow dye. She drove away in her own car to make contact with appellant.

After driving around the area near appellant's house and asking several people if they had seen him, Willie Mae finally saw appellant at about 9 or 9:30 p.m. At her request he got into her car. As they drove along she asked him "what was happening," which meant she "was asking him about some Heroin. . . ." He answered, "All right" and she asked for a "ten" (a $10 paper). He said he had only "two halves" (two $20 papers). She said, "OK, give me one." She drove toward his home and he told her to stop the car; he got out of the car, crossed the street, bent over, straightened, and returned to the car. She gave him the marked money and he handed her a red balloon containing heroin, which she turned over to the police.

Police officers in unmarked cars observed Willie Mae's search for appellant and her contact with him. They saw appellant leave the car, cross the street, "stoop down and straighten up," and return to the car. Willie Mae and appellant's hands met and they "appeared" to "pass something."

Two officers arrested appellant and found the marked money on his person. He denied selling narcotics to Willie Mae, a position that he also maintained at the trial, and claimed that she had given him the money in payment of a debt. Appellant nevertheless was convicted.

Turning, first, to respondent's assertion that this court lacks jurisdiction to hear this appeal because "appellant failed to comply with the requirement that his notice of appeal be filed within ten days of the rendition of judgment," we shall point

out why we have decided that appellant's notice of appeal sufficed to effectuate his appeal.

The facts on which respondent posits its jurisdictional argument are these: Appellant was convicted of selling narcotics on January 12, 1960. On January 19, 1960, within the 10-day period after conviction permitted for indicating his intent to appeal, appellant deposited two letters with the prison officials, both of which were dated January 18, 1960, addressed to the clerk of the Superior Court of Alameda County. Appellant signed both letters. One letter contained this language: "I was convicted of Sa*ils* of narcotics in your court and sentence*s* to the Department of Corrections on 12 January 1960. I wish to appeal my case." The second letter contained the same language, except that it omitted the words "I wish to appeal my case." On January 20, 1960, the prison officials forwarded to the Clerk of the Superior Court of Alameda County the letter which did not contain the language "I wish to appeal my case." The letter containing that language was retained in the prison files.

The clerk of the superior court refused to prepare and certify a record on appeal on the ground that he had not received a notice of appeal. Appellant filed a petition for a writ of mandate ordering the clerk to prepare and certify a record which this court treated as "an application for relief under the provisions of Rule 31a of the Rules on Appeal. . . ." While expressly reserving to the attorney general the right "to challenge the timeliness of the notice of appeal when the appeal comes before us on the merits," we ordered the Department of Corrections to forward to the clerk the letter deposited with prison officials which contained the language "I wish to appeal my case" and directed the clerk "to file it and thereafter prepare and certify to this Court the record on appeal."

Rule 31(a) of the Rules on Appeal requires an appellant to file "written notice of appeal with the clerk of the superior court within 10 days after the rendition of the judgment. . . ." The rule is well settled that "the time requirements for the taking of an appeal are mandatory" and "the appellate courts are without jurisdiction to consider an appeal which has been taken subsequently to the expiration of the statutory period." (*People* v. *Slobodion* (1947), 30 Cal.2d 362, 365 [181 P.2d 868]; *People* v. *Lewis* (1933), 219 Cal. 410, 413 [27 P.2d 73].)

When, however, a prisoner attempts to prosecute an appeal by delivering his notice of appeal to prison officials for

forwarding to the clerk, such delivery, if made within the prescribed time limit, constitutes a "constructive filing" and satisfies the jurisdictional requirement. (*People* v. *Slobodion, supra,* 30 Cal.2d 362, 368; *In re Gonsalves* (1957), 48 Cal.2d 638, 646 [311 P.2d 483] ; *People* v. *Dailey* (1959), 175 Cal.App. 2d 101, 104 [345 P.2d 558] ; *People* v. *Tapia* (1959), 174 Cal.App.2d 52, 54 [344 P.2d 33].)

In accordance with their regulations appellant filed two communications with the prison authorities. One of these properly noticed his appeal and sufficed for an appeal pursuant to the doctrine of constructive filing. The fact that appellant filed a second inadequate document should not defeat the efficacy of the valid filed notice. The dispatch by the prison authorities of the insufficient notice does not operate to destroy the strength of the properly drafted notice of appeal. We therefore conclude that appellant complied sufficiently with the provisions of rule 31(a) and that this court may properly consider the merits of the appeal.

As to the defense of entrapment, we shall point out that appellant fails to show that the record establishes an entrapment as a matter of law, since the jury could properly infer from the evidence that the criminal intent originated in the mind of appellant. In any event the defense of entrapment may not initially be raised upon appeal.

Our narrow function finds definition in *People* v. *Sweeney* (1960), 55 Cal.2d 27 [9 Cal.Rptr. 793, 357 P.2d 1049] : "Our problem is therefore to examine the evidence on this phase of the case to determine whether it shows entrapment as a matter of law, i.e., whether as a matter of law it shows that the criminal design originated not in the mind of the accused but in the mind of the officer, and that he was induced by the officer to commit a crime which he would not have otherwise committed [citation], or whether there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused [citation]." (P. 49.)

This record does not show, as a matter of law, that the "criminal design originated . . . in the mind" of the decoy or that appellant "was induced" to commit the crime. Instead, the testimony indicates a plain offer to buy narcotics and a ready acceptance; it shows the consummation of a sale without an iota of persuasion or inducement. The decoy served only to trigger the sale by the willing seller; the decoy did not impart to the mind of appellant the criminal intent of selling

narcotics. Surely the jury could infer that the criminal intent originated in the mind of appellant.

A situation comparable to the instant case arose in *People* v. *Rivers* (1961), 188 Cal.App.2d 189 [10 Cal.Rptr. 309]. A special employee of the Narcotics Bureau, Mrs. Lomack, telephoned the defendant and "arranged for a meeting for the purchase of narcotics." (P. 190.) The agents searched her, supplied her with money, and observed her throughout her entire contact with the defendant, after which she gave them a red balloon containing heroin. The appellate court denied the availability of the defense of entrapment, observed that the evidence clearly warranted "the inference that the [defendant] was not an innocent person seduced into a criminal career by officers of the law," and concluded that the evidence did not "even suggest the presence of any entrapment." (P. 193.)

 In any event, appellant's appeal must succumb to the well-established rule that the "defense of entrapment must be raised at the trial in order to prevail; it 'is one to be presented as question of fact' (*People* v. *Ryan*, 103 Cal.App.2d 904, 909 [230 P.2d 359])." (*People* v. *Polsalski* (1960), 181 Cal.App. 2d 795, 800 [5 Cal.Rptr. 762]; *People* v. *Valdez* (1961), 188 Cal.App.2d 750, 759 [10 Cal.Rptr. 664]; *People* v. *Sanders* (1960), 181 Cal.App.2d 677, 681 [5 Cal.Rptr. 498].) In the instant case appellant did not admit the commission of the crime; yet to raise the defense, " 'it must necessarily be assumed that the act charged as a public offense was committed' (*People* v. *Schwartz*, 109 Cal.App.2d 450, 455 [240 P.2d 1024])" (*People* v. *Tillman* (1956), 142 Cal.App.2d 404, 407 [298 P.2d 631]); indeed, appellant expressly denied selling narcotics to Willie Mae Thomas. Consequently, appellant waived the defense of entrapment by his failure to raise it at the trial.

We conclude that while appellant's notice of appeal may be deemed sufficient, his plea of entrapment fails both by reason of the complete absence of evidence demonstrating such entrapment as a matter of law and because of his failure to raise the defense at the trial level.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.