[Crim. No. 4664.   Second Dist., Div. One.   Feb. 26, 1952.]

THE PEOPLE, Respondent, v. PHILIP SCHWARTZ, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

WHITE, P. J.—In two counts of an information filed by the District Attorney of Los Angeles County, defendant was accused of violating section 11500 of the Health and Safety Code. Count I charged illegal possession of a narcotic in the form of morphine, while Count II alleged the sale of a quantity of morphine. A motion to dismiss under section 995 of the Penal Code was granted as to Count II and denied as to Count I. Following entry of a plea of not guilty as to Count I, the cause proceeded to trial before a jury which returned a verdict finding defendant guilty as charged.

A motion for a new trial and arrest of judgment was interposed and denied. Proceedings were suspended and defendant was granted conditional probation. This appeal is from the order denying his motion for a new trial.

The ground upon which the appeal herein is predicated makes it necessary to epitomize the factual background surrounding this prosecution. The record reveals that on June 15, 1950, one Bonnie Whitcomb, described by Officer Jones as "known to me as a narcotic user" was confined in the Los Angeles County Jail on "suspicion of narcotic addiction and use." Miss Whitcomb had known the defendant for some two or three years on terms described by her as "hardly" business. She testified, "Sometimes I didn't see him for a long time. Occasionally I saw him once a week or more often than that sometimes."

On June 15, Deputy Sheriff Jones, assigned to the narcotic detail of the sheriff's office, went to the county jail where Miss Whitcomb was incarcerated as aforesaid. There he held a conference with her which revolved around her association and dealings with defendant. Miss Whitcomb was indebted to the latter in the sum of approximately $200. On that evening Officer Jones took Miss Whitcomb from the jail to a café on Sunset Boulevard where they had dinner. While at the café Miss Whitcomb, in the presence of the officer, telephoned defendant. Upon completion of the telephone call Miss Whitcomb turned to Officer Jones and said that "the deal was on for 2:00 tomorrow afternoon." At the appointed time Officer Jones took Miss Whitcomb from the county jail to the Tropicana Motel in Los Angeles County where she resided in apartment 121. Assisting and participating in this investigation were Federal Agent Carpenter and Deputy Sheriffs Smith, Farrell, Shelton, and May, the latter being a woman deputy sheriff.

Upon arrival at the motel about 2 o'clock Miss Whitcomb was immediately taken to her apartment.

It might here be stated that a prosecution was then pending against Miss Whitcomb in the then existing Beverly Hills Justice Court, and according to her testimony, the reason she called defendant and asked him to come to her apartment was that Officer Jones had promised her that if she "could get Mr. Schwartz (defendant) to come over and see you, that he (Officer Jones) would arrange to have a certain case that was pending in the Beverly Hills court against you dismissed."

When Miss Whitcomb was taken to her apartment, as aforesaid, she had in her possession $400 in marked currency given her by the officers. The latter stationed themselves in apartment 120 near a door connecting with Miss Whitcomb's apartment, with the exception of deputies Shelton and Farrell who took up positions outside the motel. The officers in apartment 120 listened at the connecting door while Miss Whitcomb spoke and determined that they could hear conversation in her apartment.

At 2:30 p. m. defendant arrived in an automobile. His approach was witnessed by Deputy Shelton who had taken up a position across the street from the motel. From this position he could see the doors to both of the aforesaid apartments. Defendant drove west on Santa Monica Boulevard, past the motel to Westbourne Drive, the next intersection. He crossed the tracks on Santa Monica Boulevard at that intersection, returning east to La Cienega Boulevard. He again crossed to the opposite side of Santa Monica Boulevard, traveling west until he reached the aforesaid motel, where he stopped. He emerged from the driver's side of his vehicle and entered room 121. At that time he was carrying nothing with him.

From the next room the officers heard defendant's knock. The door opened and the following conversation ensued:

"Miss Whitcomb: You're late, Phil.

"Defendant Schwartz: I got held up.

"Miss Whitcomb: Did you bring the stuff?

"Defendant: I could only get a hundred. Have you got the money?

"Miss Whitcomb: Yes, I got the money.

"Defendant: Well, how about the money that you owe me. It is $170.

"Miss Whitcomb: No, it was $160.

"DEFENDANT: Well, I will settle for $150. Give me another hundred for the hundred.

"MISS WHITCOMB: How about the rest of the stuff?

"DEFENDANT: Well, I'll get it later. I'll give you a hundred tomorrow. I'll give you the rest later. I'll go get the stuff."

Thereupon, defendant left the room and the door closed behind him. About five minutes had elapsed since he left his car. He then returned to his automobile, opened the front door, and reaching over the front seat lifted out a bound catalog. Defendant shut the vehicle door and returned to Miss Whitcomb's apartment where he was intercepted by Deputy Sheriff Jones. When defendant had left the room he was not carrying anything, but when approached upon his return was carrying the aforesaid catalog under his right arm. The officer told defendant he was under arrest and asked him if he had any narcotics, to which he replied that he did not. A search of his person disclosed $250 of the marked bills originally given Miss Whitcomb. A search of the catalog revealed a small white bottle labeled "Saccharine" containing white pills.

Deputy Sheriff Jones asked defendant where he had obtained the saccharin. He told the officers that approximately one week prior to June 16 someone had broken into his automobile; that pills had been scattered throughout his car; that he believed the pills to be saccharin; that he gathered them together and placed them in the bottle. He stated that the bottle contained saccharin which he used as a sample in his capacity as a drug salesman, using the bottle to demonstrate the type of saccharin dispensed by his firm. When asked about the money found in his possession defendant stated that he had received $250 from Miss Whitcomb; that the entire amount was for a debt she owed him.

Defendant told Federal Agent Carpenter that the bottle contained saccharin. When Federal Agent Carpenter remarked that the tablets did not look like saccharin, defendant replied, "Well, it is saccharine."

The aforesaid bottle taken from defendant was initialed by Deputy Sheriff Shelton and Deputy Sheriff Jones placed it in a large white envelope which he sealed and delivered to the criminological laboratory of the sheriff's office. Clifford C. Cromp, a qualified expert forensic chemist, opened the sealed envelope and analyzed five of the 100 tablets contained in the bottle. The five tested were similar in size, shape and

appearance to the others therein contained, which were described as small and white. From his analysis, the expert concluded that each of the five contained the narcotic substance morphine.

When again interrogated at the sheriff's substation, defendant repeated the statements made at the scene of his arrest. When asked the purpose of his visit to Miss Whitcomb's apartment he answered that she was a friend, and that he merely dropped in to see her on a social visit.

Defendant did not testify in his own behalf. He offered but one witness, a druggist, who testified that he knew defendant as a drug salesman, and that saccharin came in bottles like the one taken from defendant by the officers.

Called as a witness for the prosecution, Miss Whitcomb testified that she made arrangements for appellant's visit to her in cooperation with the sheriff's office and that she gave defendant the marked money. However, she denied that she knew what defendant was to deliver to her. Her testimony was to the effect that the only conversation between herself and defendant concerned money she owed him, in the sum of $200. That this indebtedness grew out of her previous purchase of sun glasses and other items, the nature of which she could not remember. She also testified that she had borrowed money from the defendant. According to her testimony, she was under such a strain during her part in the transaction aforesaid that she could not remember all that was said between her and defendant.

The sole ground urged by appellant for a reversal of the order denying his motion for a new trial is that his arrest constitutes entrapment as a matter of law and therefore voids the conviction.

Succinctly stated, the situation with which we are here confronted is that law enforcement officers were informed by Bonnie Whitcomb of her dealings with appellant. Upon receipt of this information the officers furnished appellant an opportunity to commit the offense charged. Does this constitute unlawful entrapment as that term is known to the law? We think not.

Entrapment is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. In other words, persuasion or allurement must be utilized to entrap (*People v. Hall*, 133 Cal.App. 40, 45 [23 P.2d 783]). In the in-

stant case it appears that the officers merely employed a stratagem for the purpose of apprehending a person already engaged in criminal activities. Therefore, no case of unlawful entrapment is made out. In the case now engaging our attention, the possession of a contraband narcotic and the formation of the intent and purpose to violate the law existed before the officers became aware of the situation through the aforesaid Bonnie Whitcomb. The arrangements made by the officers were designed only to apprehend appellant in the furtherance of his criminal enterprise (*Stein* v. *United States,* 166 F.2d 851). There is ample testimony in the evidentiary narrative hereinbefore set forth to justify the jury in concluding that appellant was a willing seller of narcotics, and his conviction is not vitiated merely because enforcement officers or their agent became the willing buyer and merely created the opportunity for appellant to ply his trade (*People* v. *Cherry,* 39 Cal. App.2d 149, 152, 154 [102 P.2d 546]). ▮ It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. ▮ Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment (*People* v. *Lindsey,* 91 Cal.App.2d 914, 916, 918 [205 P.2d 1114]; *People* v. *Cherry, supra,* pp. 152, 154; *People* v. *Rucker,* 121 Cal.App. 361, 364 [8 P.2d 938]; *People* v. *Grijalva,* 48 Cal.App.2d 690 [121 P.2d 32]; *People* v. *Crawford,* 105 Cal.App.2d 530, 536, 537 [234 P.2d 181]).

"Especially is this true in that class of cases where the offense is one of a kind habitually committed, and the solicitation merely furnishes the evidence of a course of conduct" (16 C.J. 88, 89). The case at bar is barren of evidence of any element of unlawful entrapment. The jury was warranted in inferring that appellant was not *persuaded or lured,* but that he willingly committed the offense charged against him and assumed the chance of apprehension.

▮ Furthermore, the defense of entrapment is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial (*People* v. *Grijalva, supra,* p. 694). ▮ To invoke the defense it must necessarily be assumed that the act charged as a public offense was committed. In the instant case, appellant did not take the stand in his own defense. In the court

below he made no claim that he committed the crime charged but was induced, lured, persuaded or inveigled into having in his possession the morphine tablets in question. His claim in that regard lacks substance here. (*People* v. *Lee,* 9 Cal. App.2d 99, 109 [48 P.2d 1003].)

For the foregoing reasons, the order denying defendant's motion for a new trial is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied March 10, 1952, and appellant's petition for a hearing by the Supreme Court was denied March 24, 1952.