40 Cal.2d 483 (1953)
THE PEOPLE, Respondent,
v.
OLIVER C. ROBERTS, Appellant.
Crim. No. 5398. 
Supreme Court of California. In Bank. 
Mar. 13, 1953.
 Mancuso, Herron & Winn, Davis & Colvin and James T. Davis for Appellant.
 Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Wallace G. Colthurst, Deputy Attorney General, for Respondent.
 SCHAUER, J.
 Oliver Roberts (appellant herein) and Jackson Syas (who did not appeal) were charged in four counts, respectively, with (1) conspiracy to violate section 11500 of the Health and Safety Code, and three violations of that section, namely, illegally (2) transporting, (3) selling, furnishing and giving away, and (4) possessing heroin. It was alleged that each offense took place "on or about" April 3, 1951. A jury found both defendants guilty of each count, and the trial court denied defendant Roberts' motion for new trial. We have concluded that the judgment should be affirmed as to counts (1) and (3) and reversed as to counts (2) and (4), and that the order denying a new trial should be affirmed.
 Sufficiency of the Information
 Section 11500 of the Health and Safety Code declares that "Except as otherwise provided in this division, no person shall possess, transport, sell, furnish, administer or give away, or offer to transport, sell, furnish, administer, or give away, or attempt to transport a narcotic except upon the written prescription of a physician ..."
 [1a] Roberts contends that count (1) of the information is insufficient because it does not specify which particular act (possessing, transporting, etc.) denounced by section 11500 was the object of the conspiracy. [2] It is only required that the pleading be "in any words sufficient to give the accused notice of the offense of which he is accused." (Pen. Code, 952.) [3] Notice of the particular circumstances of the offense is given not by detailed pleading but by the transcript of the evidence before the committing magistrate (or the grand jury); defendant is entitled to such transcript under section 870 (or section 925) of the Penal Code. People v. Pierce (1939), 14 Cal.2d 639, 645 [96 P.2d 784]; People v. Codina (1947), *487 30 Cal.2d 356, 358-359 [181 P.2d 881]; People v. Yant (1938), 26 Cal.App.2d 725, 730 [80 P.2d 506].) [1b] Roberts' argument that he could not determine, either from the information or from the transcript of the preliminary hearing, whether the object of the charged conspiracy was the selling of heroin, or the giving away of the drug, or the transporting of it, is not well taken. The information alleges a single conspiracy with the object of accomplishing one or more types of violation of section 11500, and there was evidence which tends to show that several objects of this single conspiracy were accomplished.
 [4] Roberts urges that counts (2), (3), and (4) of the information are defective because they do not allege that defendants were not within the exceptions contained in section 11500. It is not necessary to expressly negative such exceptions. (People v. Pierce (1939), supra, p. 643 of 14 Cal.2d.) "If the accused person is unlawfully possessed of a narcotic drug, it follows that he does not hold a physician's prescription therefor." (People v. Bill (1934), 140 Cal.App. 389, 393 [35 P.2d 645].)
 Sufficiency of the Evidence
 [5] On the night of April 2, 1951, Police Officer Duarte, who was engaged in undercover narcotics work, parked his car in the Fillmore district and an informer brought defendant Syas to the car. The officer asked Syas if he could obtain some "stuff"; Syas replied that he could and that $50 was the price of "a spoon of H [heroin]." At Syas' direction the officer drove to another place in the Fillmore district. The officer gave Syas $50. Syas left the car and met an unidentified man; the officer saw them talking and moving their hands; Syas returned to the car with heroin.
 On April 3d a similar sale of heroin to Duarte took place; on this occasion defendant Roberts drove Syas to the place where the sale was made and remained in his car while Syas got out, handed the heroin to Duarte, and took Duarte's money. Syas went to Roberts' car with the money and spoke with Roberts. Roberts then drove away, while Syas and Duarte went to the home of the informer.
 On April 26th a sale of cocaine was made under circumstances similar to those of the previous sales of heroin; on this occasion one Briscoe, rather than Syas, acted as "go between"; Briscoe directed the officer to park at a certain place, *488 left the car, was then seen with defendant Roberts, returned to the officer's car, and sold him the drug.
 After his arrest Roberts was questioned by a narcotics inspector. The inspector told him that he was charged with the sale of narcotics on April 3d. Roberts denied having sold narcotics on that date, but when he was asked whether he made his living by selling narcotics he remained silent. The inspector "asked him if he had ever been with the defendant Jackson Syas or Hardin Briscoe on this evening, and he said, yes, he had, and he had been with many others on that evening."
 The foregoing evidence is sufficient to permit the inference that Roberts and Syas were members of a conspiracy engaged in unlawful traffic in drugs and that the heroin which was sold by Syas on April 3d was transported and furnished by Roberts.
 Roberts' arguments as to the evidence go to its weight rather than its sufficiency. It is true, as he points out, that the evidence against him is entirely circumstantial. [6] But the jury were correctly instructed that "If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt." [7] It is the trier of fact, not the appellate court, which must apply this rule. (People v. Green (1939), 13 Cal.2d 37, 42 [87 P.2d 821]; People v. Hills (1947), 30 Cal.2d 694, 701 [185 P.2d 11].)
 Conduct of Officer Duarte
 [8] As is shown by the foregoing summary of the evidence, Duarte, through the help of the informer, made contact with Syas and asked Syas to sell him drugs. The evidence also shows that on the nights of April 2d and 3d, after he had purchased the heroin, Duarte went with Syas to the latter's home, where Syas, his wife, and the informer "took a fix" (an injection) of the heroin. This was done pursuant to an arrangement between Syas and the informer, both narcotic addicts. Officer Duarte testified that he had no prior knowledge of such arrangement and that when it was carried out "there was nothing I could do about it, being if I did I would just expose myself as a police officer."
 Roberts urges that the foregoing shows that Duarte acted as agent provocateur and that without his planning and *489 instigation the crimes would never have been committed. In this Roberts is mistaken. [9] "It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. [10] Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment [citations] ... The jury was warranted in inferring that appellant was not persuaded or lured, but that he willingly committed the offense charged against him and assumed the chance of apprehension." (People v. Schwartz (1952), 109 Cal.App.2d 450, 455 [240 P.2d 1024]; see People v. Jackson (1951), 106 Cal.App.2d 114, 125 [234 P.2d 766].)
 Extrajudicial Statements of Syas
 [11] The People introduced evidence, both during their case in chief and on rebuttal, that Syas, questioned after his arrest, stated that he had known defendant Roberts and delivered packages for him for compensation on various occasions, including the nights of April 2d and 3d, but did not know what was in the packages. Syas testified that he did not meet Roberts on the nights in question and that while he knew Roberts' name he had never spoken with him prior to the bringing of the present charges. The evidence of Syas' contradictory extrajudicial statements was admissible against him both because it tended to prove that he had in fact associated with and worked for Roberts and because it tended to impeach Syas. (People v. Southack (1952), 39 Cal.2d 578, 584 [248 P.2d 12].) [12] Such evidence, however, would be inadmissible hearsay as to Roberts. (People v. Gilliland (1940), 39 Cal.App.2d 250, 262 [103 P.2d 179]; Fiswick v. United States (1946), 329 U.S. 211, 217 [67 S.Ct. 224, 91 L.Ed. 196] ["confession or admission by one co-conspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise. It is rather a frustration of it ... (A conspirator's) admissions were therefore not admissible against his erstwhile fellow-conspirators"].)
 The record does not support Roberts' contention that the rule last quoted was violated during his trial. In addition to the fact that his own counsel appears to have been capable, well prepared and ever alert to protect the appellant's interests it is gratifying to note that both the prosecuting attorney and the trial judge, particularly in this respect, *490 appear to have been commendably alert and conscientious in the performance of their respective duties, which of course included as to each of them the duty of seeing to it that the trial was in all respects fair to the defendants as well as to the People. Both the prosecuting attorney and the trial judge repeatedly stated to the jury during the trial that extrajudicial statements of one defendant were offered, admitted, and could be considered only against him, not against the other defendant, and the closing charge to the jury included such an instruction.
 Asserted Misconduct of Prosecuting Attorney
 [13] Roberts contends that the prosecuting attorney was guilty of misconduct in asking him, on cross-examination, "You're commonly known in the Fillmore as a peddler of narcotics, are you not?" Defense counsel promptly objected to the question and the objection was sustained. There was no request that the jury be instructed to disregard the question. As indicated above, throughout the trial there appears to have been an atmosphere of fairness which was contributed to by the trial judge and by both counsel. We find nothing in the record to indicate that the asking of the question was anything more than an inadvertence. It should not have been asked but in the circumstances we do not believe that asking the question was prejudicial or can possibly be considered to constitute ground for reversal.
 Exclusion of Evidence of Experiment
 [14] According to Duarte's testimony, the sale of heroin on April 3d, when defendant Roberts drove Syas to the place where the transaction was consummated, took place at about 9 o'clock in the evening, at Laguna and Ellis Streets. In an effort to impeach Duarte, Roberts sought to introduce the testimony of an investigator concerning "an experiment that was conducted at 9:00 in the evening [in the month of October, 1951] on the corner of Laguna and Ellis Streets with three automobiles involved, traveling at the speed of 20 miles an hour, persons in the cars, and the ability or the inability of a person to identify them, and at what distances they could identify them ... I believe his testimony would be this was impossible for him to do." The last quoted language is from defendants' offer of proof. After colloquy among court and counsel as to whether it could be shown that the conditions under which the experiment was conducted were substantially similar to those at the time to which Duarte's *491 testimony referred, the trial court refused to admit evidence of the experiment. Defendant urges that this ruling was prejudicially erroneous.
 A principal ground of the People's objection to the proffered evidence was that there was no showing that the light was similar on the evening of April 3d and on the evening of the experiment in October. Also, according to the offer of proof, the car which took the role of Roberts' car during the experiment was not the same model as the one which Roberts had driven on April 3d. It was within the discretion of the trial judge to determine whether the conditions of the experiment and the conditions of April 3d to which Duarte testified were sufficiently similar that the evidence of the experiment would aid rather than confuse the jury. (People v. Parker (1935), 4 Cal.App.2d 421, 424 [40 P.2d 836]. Cf. People v. Dyer (1938), 11 Cal.2d 317, 321 [79 P.2d 1071], with People v. Hadley (1917), 175 Cal. 118, 122 [165 P.2d 442].)
 Multiple Convictions Based on One Indivisible Transaction
 [15] The information charges and there is evidence that on April 3d defendant Roberts transported, furnished, and possessed heroin. Each of these acts is denounced by section 11500 of the Health and Safety Code. The three acts are charged and adjudged as separate crimes. However, "cooperative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted." (People v. Clemett (1929), 208 Cal. 142, 144 [280 P. 681]; see, also, People v. Knowles (1950), 35 Cal.2d 175, 187 [217 P.2d. 1].) [16] The present case resembles the Clemett case in that the only possession and transportation of heroin shown were those necessarily incident to its sale. And as in the Clemett case (p. 150 of 208 Cal.) the error can be corrected by this court.
 For the reasons above stated the judgment is affirmed as to counts (1) and (3) and reversed as to counts (2) and (4), and the order denying a new trial is affirmed.
 Gibson, C.J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.