[Crim. No. 7153.   Second Dist., Div. Three.   Oct. 11, 1960.]

THE PEOPLE, Respondent, v. TOMMIE RAY, Appellant.

Russell E. Parsons for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

VALLÉE, J.—In a nonjury trial defendant was convicted of bribery. A motion for a new trial was denied. Probation was granted. Defendant appeals from the judgment (order granting probation) and the order denying a new trial.

At the time in question William S. Biddle was and had been for about nine years a police officer of the city of Los Angeles. In February 1959 he was given a number of locations to check, apparently for bookmaking. Between February and June, while in uniform, he saw defendant "more than once." In February or March he saw defendant at 2128 South Hooper Street, a business establishment. Defendant approached Biddle and said he wanted to talk to him. Biddle said, "All right." Defendant said his bookmaking activities at 2128 South Hooper were being hampered by the extensive investigations conducted by the police. He asked Biddle if he had a "hard on for him," or if he had a personal grudge against him and that was why he was investigating his places so much; Biddle told defendant he was not mad at him, he and the police department "had no hard on for him"; it was part of his duties to conduct bookmaking investigations and he would continue to make them at defendant's locations. Defendant said, "You sure are hurting my business. Can't I do anything for you?" Biddle replied, "No, there is nothing you can do for me." They parted.

On June 22, 1959, Biddle, in uniform, went to an alley in south Los Angeles in response to a radio call. Defendant met him and said he wanted to talk to him. Biddle said he would not talk to him because his field supervisor and other officers were in the area. After handling the radio call, Biddle went to his police vehicle. Defendant walked to the vehicle and this conversation occurred: Defendant: "You sure are hurting my bookmaking business. Isn't there anything I can do for you? Do you want to take a little take?" Biddle: "What do you mean?" Defendant: "Whiskey." Biddle: "I am not interested in whiskey." Defendant told Biddle that if he

wanted the whiskey he could get all he wanted at a liquor store at 1501 East 22d Street.

Between June 22 and 30, Biddle arrested a man named Clemmons on a charge of bookmaking at an establishment operated by defendant.

Biddle saw defendant again on June 30, 1959, at 2128 South Hooper. Biddle was in the establishment making an arrest of some person and asked "Where's Tommie Ray?" Defendant entered the premises and told Biddle he would like to talk to him after he was through. Biddle, defendant, and the man under arrest walked out of the establishment. Biddle told the man under arrest to sit in the police car. Biddle and defendant walked to the corner. Defendant asked him why he did not pick up the whiskey. Biddle said he was not interested in whiskey. Defendant: "What are you interested in?" Biddle: "Women." Defendant: "That can be quite expensive." Biddle: "That's right." Biddle told defendant he did not want to talk to him in uniform while he was working, that if he wanted to talk to him to do it "at an off-duty hour at a designated place." It was arranged they would meet at a park called South Park in Los Angeles at 10 a.m. on July 3, 1959. Defendant told Biddle he did not want to talk to him in an enclosed building or in either of their vehicles "because of the fear of bugs," the meeting should be a casual one, they would walk through the park and accidentally bump into each other.

About 10 a.m. on July 3, 1959, Biddle, accompanied by other officers in a separate vehicle, went to South Park. He had a microphone with a battery and a transmitter concealed on his person. He entered the park. The other officers did not accompany him. Defendant drove to near the park, left his car, and walked into the park. Defendant met Biddle, and in a low, whispering tone asked him if he were "bugged or wired," and searched his outer clothing with his hands, feeling parts of his body. Biddle asked how business was, and defendant said, "Bad." Defendant asked Biddle, "Do you want to take a little take?" Biddle: "Of whiskey?" Defendant: "No." Biddle: "I thought you were talking about something else." Defendant: "You name it." Biddle: "It's up to you." Defendant: "Then I'll have something to go on." Biddle: "I know five books that you have." Defendant said he did not have more than three. Biddle: "Oh, come off of it. You've got more than three spots." Defendant laughed, again ran his hands up and down the sides of Biddle's body, and

held up four fingers. Biddle: "What do you mean—four bills a month?" Defendant: "$10 a week for each spot." Biddle: "Then you got four places?" Defendant: "You tell me what you want to do for it." Biddle: "I never done [*sic*] anything like this before, so I just don't know. I don't know how much money you make. I don't know how your business is. All I know is I go in the book spots." Defendant: "You're hurting my business, coming in as often as you do." Biddle: "Like you say, there's no reason to hit you like I do." Defendant laughed, held up his four fingers again, and said: "$10 a week for each spot." Biddle: "$10 a week for each spot? It's kind of low, isn't it?" Defendant: "That's it—just about right." Biddle: "It's worth $10 a spot. I'm going to have to know where your four spots is [*sic*]. I thought you had five spots, three of them on Central there." After further conversation relative to the "spots" defendant operated, defendant said: "Do you want to work by the week or the month?" Biddle: "Work by the week, I guess. It would be better, but how would I meet you? I don't want anyone else involved in this." Defendant: "There ain't nobody else involved in this." Biddle: "In other words, you'll pay me $10 a week for each spot?" Defendant: "Yah." Biddle: "What do you want me to do for you, huh?" Defendant: "I want you, you know, just, do what you've been doing, naturally—that's the thing you know—keep nothing else away." Biddle: "In other words, you want me to keep the heat away?" Defendant: "Well, do the best you can, you know what I mean—you'll have to do it in a way—you know——." Biddle: "I know." Defendant: "I mean just keep working normally, just break off lightly, you know. You don't have to do it sudden like, you know what I mean?" Biddle: "Yah." Defendant: "Otherwise, if you can't do no good—enough to go there. Just remember I'll be on the street. . . . I couldn't tell you you couldn't go there, because that's your business, you know what I mean? Otherwise, you and I have an understanding. You've got a job to do and I've got a job to do." Biddle: "So you won't go more than $40 a week?" Defendant: "Business, you know—of course——." Biddle: "In other words, whether you make it or not, I get my $40?" Defendant: "That's right." Defendant took two $20 bills from his pocket, took Biddle's package of cigarettes, looked at it, handed Biddle the two bills and the package of cigarettes, and said, "That's for this week, that's for this week. Sunday week will be for next week, right?" We have

related the material parts of the conversation. During the conversation other officers were parked nearby making a record of the conversation. Biddle took the two bills to the police internal affairs division where he recorded the serial numbers and placed them in a safe. Defendant was arrested on July 10, 1959. During the period from about a week before June 22 to July 3 Biddle kept his superiors informed as to his contacts with defendant.

The only point urged for reversal is: "It is our contention that the money paid to Officer Biddle by the defendant-appellant Ray was paid only after Ray had been induced to do so by the policeman Biddle. It was entrapment. The idea of obtaining the money from Ray originated in the mind of Biddle; Ray had no intention at any time of bribing the officer." This statement, of course, says the evidence shows as a matter of law that defendant was entrapped. The point cannot be sustained.

■ Entrapment is a positive defense, imposing on an accused the burden of showing he was induced to commit the offense for which he is on trial. (*People* v. *Schwartz*, 109 Cal.App.2d 450, 455 [240 P.2d 1024].) ■ Entrapment is not established as a matter of law where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the offense charged originated in the mind of the accused. (*People* v. *Malotte*, 46 Cal.2d 59, 64-65 [292 P.2d 511].) ■ Merely affording an opportunity for the commission of the offense does not constitute entrapment. ■ "Where the doing of an act is a crime, regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense." (*People* v. *Lindsey*, 91 Cal.App.2d 914, 917 [203 P.2d 572].) [■■ Where an accused has a pre-existing criminal intent, the fact that when solicited by a decoy he commits a crime does not show entrapment. (*People* v. *Benford*, 53 Cal.2d 1, 10 [345 P.2d 928].)

■ It is clearly inferable from the evidence that defendant was engaged in bookmaking. He had at least three such establishments and the police were investigating him. About a week before June 22, 1959, defendant approached Officer Biddle. In the course of the conversation he com-

plained about the activities of the police and asked the officer, "Can't I do anything for you?" Testimony of defendant to the effect the officer "propositioned" him in this conversation merely created a conflict in the evidence. On June 22 defendant again approached the officer, said he wanted to talk to him, and added, "You sure are hurting my bookmaking business. Isn't there anything I can do for you? Do you want to take a little take?" Defendant said he did not say "a little take," that he said "a little taste," and was referring to whiskey. It was for the trial court to determine as a matter of fact whether he said "a little take" or "a little taste." On June 30 defendant asked the officer why he did not pick up the whiskey. When the officer told defendant he was not interested in whiskey, defendant asked, "What are you interested in?" In testifying, defendant admitted he gave the officer $40 but claimed he did so through fear because the officer threatened to close his place of business unless he gave him money. Obviously the trial judge gave no credit to defendant's story. The trial court's determination of the veracity of a witness is final. ■ The existence or nonexistence of entrapment is a question of fact for the trier of fact. (*People* v. *Castro,* 167 Cal.App.2d 332, 337 [334 P.2d 602].) ■ The evidence warranted the court in inferring that defendant was not persuaded or lured but that he knowingly committed the offense, and that the idea of bribery did not originate in the mind of the officer but in the mind of defendant.

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.