[Crim. No. 7883. Second Dist., Div. One. Aug. 6, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM B. TILLER, Defendant and Appellant.

William B. Tiller, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Charles B. McKesson, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—On February 17, 1961, the Grand Jury of Los Angeles County filed an indictment against William B. Tiller and William Bernard. Tiller was indicted in counts I, II, III and V of said indictment for selling heroin on December 30, 1960, January 3, 1961, January 5, 1961, and January 13, 1961, respectively. Bernard was indicted in said indictment in counts I, IV and V of selling heroin on December 30, 1960, January 11, 1961, and January 13, 1961, respectively. It was further charged that each of the defendants had previously been convicted of at least one felony and that each had served at least one term in prison. On February 24, 1961, the public defender was appointed to represent Tiller. The time for the taking of a plea was continued to March 3, 1961. On March 3, 1961, both Tiller and Bernard were in court represented by the public defender and the taking of a plea was continued to March 8, 1961. On March 8, 1961, each defendant was in court with counsel and each pleaded not guilty. The case was set for trial on May 5, 1961. The record indicates that there was no objection made by either defendant or his counsel to the setting of the case for trial on such date. On March 27, 1961, the defendant Tiller was in court with his counsel and the cause was advanced from May 5, 1961. The public defender made a motion to be relieved of representing Tiller because of a conflict and the cause was continued to March 29, 1961, for further proceedings.

On March 29, 1961, Tiller and his counsel (public defender) were in court. The motion of the public defender to be relieved was granted. Bernard Segal was appointed under the provisions of section 987a, Penal Code, to represent Tiller. The trial was again set for May 5, 1961. No objection was made by counsel or Tiller at this time to the trial date. The trial was started on Friday, May 5, and continued on Monday, May 8, and Tuesday, May 9, before a jury. The public defender represented Bernard throughout the trial and Segal represented Tiller. The jury returned a verdict of guilty on each count as charged. The defendants each admitted the prior conviction or convictions charged. On June 6, 1961, the motion of each defendant for a new trial was denied. Probation was denied and the defendants were duly sentenced.

On June 9, 1961, Tiller filed what loosely may be termed a notice of appeal. On June 12, 1961, Bernard filed a notice of appeal. Tiller made no mention of what he appealed from in his notice but we have assumed that he has appealed from the judgment and the order denying the motion for a new trial.

A résumé of some of the facts is as follows: Officer Calhoun of the narcotics detail of the Los Angeles Police Department saw Tiller on December 30, 1960, at 37th Place and Vermont. In a conversation between Tiller and the nonuniformed officer, Calhoun, Tiller inquired of the officer if he was ''looking them over.'' The officer replied, ''Yes, I am looking but not for women.'' Tiller then asked what he was looking for and the officer answered, ''I am looking for some smack (heroin).'' Tiller responded by saying that he knew a person who had some for sale for $10 and the officer replied, ''Let's go and get one.'' The two men then went to an address on 59th Place, where and when Tiller got out of the officer's car and was gone for about five minutes. When Tiller returned to the car he told Calhoun, ''He is calling Mike now,'' and a few minutes later Bernard joined Tiller and Calhoun and the three men then went to Vernon and Ascot. At that point Tiller asked Calhoun for the money to be used in the purchase of the heroin and the officer gave Tiller two $5 bills. Tiller handed the money to Bernard, Bernard left the car, went around the corner, returned and directed Calhoun to 2100 South Park Grove Avenue. At that address Bernard and Calhoun went to a restroom and Tiller went to his own apartment. In the restroom Bernard took a balloon from his mouth and gave it to Calhoun. Tiller came into the restroom, tied a handkerchief around his arm and inserted a needle into a vein. The balloon and contents received by Calhoun were taken to the police station.

On January 3, 1961, Calhoun went to 2100 Park Grove Avenue and Tiller asked him, ''Do you want to score [get some narcotics]?'' The two men got into the officer's car and went to 5th and Towne Streets where Tiller, after having received $10 from Calhoun, left the car and returned shortly and handed to Calhoun a balloon. Tiller and Calhoun returned to 2100 Park Grove Avenue, where Calhoun gave Tiller $3, apparently in payment for securing the heroin which was in the balloon. The balloon received by Calhoun was taken to the police station.

On January 5, 1961, Calhoun went to the Park Grove address, Tiller and Calhoun then went from that address to 5th and Stanford Avenue, where they found they could not buy any heroin at that particular time. Tiller directed Calhoun to Vernon and Ascot, where Tiller absented himself for a few minutes and then returned to the car with an unknown person. The latter directed Calhoun to 52nd and

McKinley, where Tiller (who had received $10 from Calhoun) and the third person left the car for a time. Upon their return Tiller reported that they had the heroin and he handed a balloon to Calhoun. Tiller was taken back to his apartment and the balloon received by Calhoun was taken to the police station.

On January 11, 1961, Calhoun contacted Bernard at his place of residence on West 59th Place and talked with him about the purchase of some heroin. Bernard indicated that he did not know for sure whether he could secure anything for Calhoun, that his (Bernard's) probation officer (in fact, parole officer) had just left the house, and said, "But I will try to see if I can find something." Bernard and Calhoun left in the latter's automobile to go to 51st and McKinley Avenue. Calhoun handed $13 to Bernard and Bernard went into an alleyway and returned in about 10 minutes saying, "I got one for you and a half for me." Later Bernard got out of the car at 41st Street and the balloon received by Calhoun was taken to the police station. Bernard had just been released from prison in the latter part of November 1960.

On January 13, 1961, Tiller and Calhoun, after picking up Bernard, went to several places in an effort to buy heroin. At 5th and Stanford, after Calhoun had given Tiller $10, Tiller and Bernard were successful in purchasing two capsules which Bernard gave to Calhoun. The capsules received by Calhoun were taken to the police station.

A chemical analysis was made of the contents of the containers (balloons and capsules) heretofore mentioned and it was determined that in each instance the containers held heroin.

Calhoun made rather extensive notes of what occurred and what was said in each of the episodes above related.

After the defendants were arrested and on or about February 19, 1961, at the police station Tiller and several officers had a conversation which was tape recorded. Calhoun related to Tiller what was contained in his notes about the various sales of heroin and what occurred at the various places and times as heretofore set forth. Tiller was asked if the events took place as related and his answer was in the affirmative. The notes were exhibited to respective counsel at the time of the trial and the recording of the conversation at the police station was played to the jury.

Bernard, as heretofore indicated, filed a notice of appeal

but failed to file a brief. After due notice that appeal was dismissed under rule 17(a), Rules on Appeal.*

Tiller contends that the record demonstrates that as a matter of law he was entrapped and that the court erred in rejecting the defense of entrapment, that the evidence is insufficient to support the verdict and that there is no evidence that a sale was made by him; further that the trial court was without jurisdiction in that the trial was not commenced within the 60-day statutory period.

It is appropriately stated in *People* v. *Tillman,* 142 Cal.App.2d 404, 407 [298 P.2d 631]:

"[6] '[T]he defense of entrapment is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial (citation). [7] To invoke the defense it must necessarily be assumed that the act charged as a public offense was committed' (*People* v. *Schwartz,* 109 Cal.App.2d 450, 455 [240 P.2d 1024])." (See also *People* v. *Spencer,* 193 Cal.App.2d 13, 18 [13 Cal.Rptr. 881]; *People* v. *Schwartz,* 109 Cal.App.2d 450, 455 [240 P.2d 1024].)

Tiller's defense was in effect that he had been inveigled into selling the narcotics to Calhoun. In his brief he says, "Appellant did not deny the allegations contained in the indictment to the contrary, he admitted making the sale but claimed the defense of entrapment." In any event the evidence is clear to the effect that Tiller did make the sales of which he was charged and convicted.

With reference to the defense of entrapment it was appropriately said in *People* v. *Braddock,* 41 Cal.2d 794, 802 [264 P.2d 521]:

"[8] The many decisions in this state which define the defense of entrapment were reviewed in *People* v. *Lindsey,* 91 Cal.App.2d 914 [205 P.2d 1114], and the law stated as follows: 'Where the doing of an act is a crime, regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefore, constitutes no defense. (Citations.) If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the

---

*Now California Rules of Court, rule 17(a).

sale, there is no entrapment.' (P. 917.) ▮ [9] More recently it was held: 'It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. ▮ [10] Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment.' (*People* v. *Schwartz,* 109 Cal. App.2d 450, 455 [240 P.2d 1024]; quoted with approval in *People* v. *Roberts, supra,* [40 Cal.2d 483 (254 P.2d 501)] at page 489; accord *People* v. *Makovsky,* 3 Cal.2d 366, 369 [44 P.2d 536]; *People* v. *Branch,* 119 Cal.App.2d 490, 494 [260 P.2d 27]; *People* v. *Alamillo,* 113 Cal.App.2d 617, 620-621 [248 P.2d 421]; *People* v. *Crawford,* 105 Cal.App.2d 530, 537 [234 P.2d 181].)''

▮ The question of whether there was entrapment is one of fact. See *People* v. *Castro,* 167 Cal.App.2d 332, 337 [334 P.2d 602] where it is said:

''[8] Entrapment is an affirmative defense imposing upon the accused the burden of proving that he was induced to commit the crime of which he is charged, and the existence or nonexistence of entrapment is a question of fact for the trier of fact who is the sole judge of the weight and worth of the evidence. (*People* v. *Gutierrez,* 128 Cal.App.2d 387, 390 [275 P.2d 65].)''

▮ The defense is not established as a matter of law if there is any substantial evidence from which an inference can be drawn that the criminal intent to commit the act in question originated in the mind of the culprit. (*People* v. *Terry,* 44 Cal.2d 371, 372 [282 P.2d 19]; see also *People* v. *Benford,* 53 Cal.2d 1 [345 P.2d 928].)

The jury in this case was fully instructed upon the doctrine and defense of entrapment and obviously it chose to believe the officer rather than either of the defendants. As heretofore indicated, it was for the jury to make the determination of the facts in the cause.

With reference to the contention that the case was tried at a time which was more than 60 days from the date of the return of the indictment, there is no merit to appellant's contention. ▮ The defendant can waive his rights to a speedy trial. (*People* v. *Weiss,* 50 Cal.2d 535, 558 [327 P.2d 527]; *People* v. *Tahtinen,* 50 Cal.2d 127, 131 [323 P.2d 442]; *People* v. *Baker,* 164 Cal.App.2d 99, 103 [330 P.2d 240].)

▮ Failure to object to a setting date which is beyond

the statutory limits is deemed to be a waiver of any objection thereto. (*Ray* v. *Superior Court,* 208 Cal. 357, 358 [281 P. 391]; *People* v. *Anderson,* 126 Cal.App.2d 702, 704 [272 P.2d 805].) As heretofore noted there was no objection made at the time of trial or at all in the superior court. The contention cannot be made for the first time on appeal. (*People* v. *Jordan,* 45 Cal.2d 697, 708 [290 P.2d 484]; *People* v. *Mitman,* 184 Cal.App.2d 685, 689 [7 Cal.Rptr. 712].)

Tiller in this case made an application to this court for an appointment of counsel. The matter was referred to the proper committee of the Los Angeles Bar Association. A responsible member of that group examined and reviewed the file and the transcript of the proceedings and thereafter directed a letter to this court wherein, among other things, he stated in effect that there was no meritorious ground for an appeal and that the rulings of the trial judge were correct. The members of this court thereafter separately and jointly examined the documents and the record and concluded that it would be neither useful nor proper to appoint counsel for Tiller in this cause and thereupon rejected the application for appointment of counsel.

The order denying a motion for a new trial and the judgment are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 23, 1962, and appellant's petition for a hearing by the Supreme Court was denied October 2, 1962. Peters, J., was of the opinion that the petition should be granted.