[Crim. No. 8240.   Second Dist., Div. Two.   June 27, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND DURAZO, Defendant and Appellant.

Louis L. Litwin, under appointment by the District Court of Appeal, and Litwin & Barouh for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant Raymond Durazo and his codefendant Constantine Mirosnik were convicted of violation of section 11500, Health and Safety Code, in that they did on October 19, 1961, "willfully, unlawfully and feloniously have possession of a narcotic, to wit, amidone." Defendant appeals, claiming (1) that the evidence is insufficient to sustain the verdict, and (2) prejudicial misconduct of the prosecutor. We find no merit in either contention.

On October 19, 1961, Police Officers Conrad and Sparkenbach entered Charlie's Bar at 200 South Hill Street, Los Angeles, about 2:50 p.m. In the portion set aside for restaurant purposes they saw Durazo and Mirosnik seated together at the lunch counter. Both were staring forward with eyes drooping and constantly closing; they appeared to be asleep or under the influence of something; they were not talking and were just staring with their heads nodding and eyes blinking. Officer Conrad having had a long experience in such matters, then formed the opinion that both were under the influence of something, probably heroin. As the officers were watching, Durazo looked in their direction; his eyes opened widely; he appeared startled and hit Mirosnik with his right elbow, said something and as Mirosnik looked up his

eyes opened widely. Then Durazo, sitting on the left of Mirosnik, appeared to go into his trouser pocket and to hand an object to Mirosnik who took it and made a motion toward his mouth. The police ran over behind them and Conrad saw Mirosnik pick up a napkin, put it to his mouth and then throw it to the floor. Sparkenbach picked it up, opened it, and said, "Police officers; stand up." While Conrad was searching defendants Sparkenbach showed him the napkin containing three balloons which were still wet, apparently from saliva. These items were properly identified, preserved and later placed in evidence.

Mirosnik, in the presence of Durazo, said to the officers "that the heroin on the floor, 'that you found on the floor is not mine.'" Durazo also said "the stuff you found on the floor wasn't mine." Mirosnik said he had been using narcotics for 34 years, shooting it in his veins, and displayed hypodermic needle marks on both arms. Conrad was of the opinion they had been caused by injections of narcotics. Durazo said he had been using narcotics for several years. Conrad observed needle marks on said defendants' arms which in his opinion were caused by narcotic injections. As they talked, Conrad entertained the opinion that both defendants were under the influence of a narcotic; their eyes were drooping and heads nodding; eyes of both were pin-pointed and arms of both bore recent hypodermic needle marks. Amidone, a synthetic narcotic, is a depressant which pin-points the eyes and acts like a sedative.

Though Conrad did not see Durazo's hands go into his pocket (below the level of the counter) he was positive this occurred; he saw Durazo making a "handing motion" to Mirosnik who extended his left hand and the hands of the two defendants met or joined, apparently passing something; but he did not see any object pass between them; this was just above the level of the counter. Mirosnik immediately placed his hand in the area of his mouth and as he did so a second time Conrad saw the napkin going to the mouth. Conrad and Sparkenbach ran toward defendant and as Conrad was stopping he saw Mirosnik drop the napkin to the floor, saw it leave his hand and go to the floor. As Sparkenbach was picking the napkin up Conrad required defendants to stand and was searching them. "This all happened real fast." The foregoing statement is based principally upon the testimony of Officer Conrad.

Officer Sparkenbach testified substantially to the same effect with some normal variations. He could not see defendants' hands below the counter but he did see their arm movements and saw Mirosnik's hand come to his mouth. When the officers walked behind defendants, Sparkenbach saw the napkin in Mirosnik's right hand at his mouth and then saw him drop it to the floor where it landed touching his right foot. When recovered by Sparkenbach the balloons were wet with saliva and contained a whitish powder. Defendants were then arrested.

Defendant Mirosnik did not testify. Durazo's version of events was that the officers were in plain clothes and he did not know them or know they were police; he did not "hand these narcotics to Mr. Mirosnik" and did not "possess narcotics on that day"; or have any "narcotics in my possession"; also, that he did not see Mirosnik have any narcotics in his possession; he did not remove anything from his pocket and had no needle marks on his arm. He told the officers he had quit using narcotics.

Plainly, the jurors accepted the testimony of the officers and rejected that of appellant. When discharging the jury the trial judge said: "I think that the verdict is entirely proper. I don't know whether this means anything to you, but the only difference I would have done is that I would have done it in about two minutes, but there are twelve of you so it takes more time." ■ Of course we must accept as established all testimony and other evidence and inferences therefrom which are favorable to respondent and must reject that which is opposed to it. (*People* v. *Newland,* 15 Cal.2d ·678, 681 [104 P.2d 778]; *People* v. *Matlock,* 51 Cal.2d 682, 695 [336 P.2d 505, 71 A.L.R.2d 605].) ■ So doing, we find the evidence sufficient to support the verdict. The rapid succession of events and their logical relation to each other leave little, if any, room to doubt that appellant did have in his possession and did pass to Mirosnik the balloons containing the narcotics.

■ The efforts of appellant's counsel to forestall this conclusion must prove fruitless. Apparently recognizing the rule which precludes a reweighing of the evidence by a court of review, they would destroy the legal effect of the officers' testimony by pointing out discrepancies between their stories and some internal conflicts therein. But this assault meets an impregnable wall in the rule voiced in *People* v. *Huston,* 21 Cal.2d 690 [134 P.2d 758] and numerous other cases.

■ *Huston,* at page 693, says: ''Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] ■ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] ■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]''[1] The rule above quoted has been reiterated in *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.,* 28 Cal.2d 756, 760 [172 P.2d 1]; *People* v. *Greer,* 30 Cal.2d 589, 594 [184 P.2d 512]; *People* v. *Simpson,* 43 Cal.2d 553, 562 [275 P.2d 31]; *People* v. *White,* 43 Cal.2d 740, 747 [278 P.2d 9]; *People* v. *Lyons,* 47 Cal.2d 311, 319-320 [303 P.2d 329]; *People* v. *Wein,* 50 Cal.2d 383, 399 [326 P.2d 457]; and by a long line of decisions of the District Courts of Appeal.

■ The claim of misconduct of the prosecutor grows out of references made by him or by a witness to heroin—the information having specified amidone as the narcotic possessed by these defendants. In describing the contents of the balloons Officer Sparkenbach said: ''We checked the balloons and they had a whitish powder inside them and we placed the defendants under arrest.'' Doubtless the prosecutor had some such evidence in mind when he first mentioned heroin. To Richard Bingle, forensic chemist who had testified that the balloons contained a chemical compound known as amidone or metadone, the prosecutor put the questions: ''Q. Now you have examined heroin as well as amidone, have you not? A. I have. Q. Are they similar in appearance in powder form?'' Objection was made and sustained and the judge reacted with vigor, as one of counsel has phrased it. The deputy district attorney at the bench explained: ''My point is that this is similar in appearance to heroin and I intend to call an officer as an expert because in its appearance this resembles heroin. Another point is simply this, that the officer

[1]This case was overruled in *People* v. *Burton,* 55 Cal.2d 328, 352 [11 Cal.Rptr. 65, 359 P.2d 433], but upon a point having no relation to the above quotation.

will testify that the eyes of the defendants appeared to be drooping and they appeared to be under the influence of something. This chemist, I expect, will be able to testify that amidone is a synthetic opiate derivative; that heroin is also an opiate derivative, and that although not the same, that both of them cause a reaction as a depressant. THE COURT: I will deny your offer of proof. I will tell you, you certainly are entitled to prove the symptoms of anyone who is under the influence of amidone but not heroin. That could be highly prejudicial. Heroin is the one drug that everybody abhors. I see no objection to him testifying to the physical effect of the person who is under the influence of amidone but you are to stay away from the similarity of heroin or anything, and do not discuss that it is even similar to heroin. MR. DANIELS: I just wanted to show that the officer recognized the symptoms. THE COURT: I don't know what it has to do with heroin. I am going to deny your offer of proof and you can only prove by some qualified person that he was under the influence of amidone and you understand me. . . . THE COURT: Well, of course I think it is material what they are under the influence of but you are not to make reference to heroin or any other narcotic. Proceed and you understand me? MR. DANIELS: Yes.'' The second witness, Officer Conrad, testified that as he stood watching defendants: "In my opinion they were under the influence of something, probably heroin." Motion to strike was denied: "That is an opinion, Counsel, and your motion to strike will be denied." The witness also testified that Mirosnik "stated that the heroin on the floor, 'that you found on the floor is not mine.' " No motion or order to strike this answer was made. Later the same officer was asked: "Now is the drug amidone, does that drug react as a stimulant or depressant?" and this led to the following: "A. BY THE WITNESS: The symptoms of amidone are the same as heroin. MR. GARFINKLE: That is not the case. THE COURT: The answer may go out and the jury is to disregard it in its entirety. The question is what are the symptoms. A. BY THE WITNESS: The symptoms are a depressant; it pinpoints the eyes and acts like a sedative. Q. BY MR. DANIELS: What do you mean by pinpoints the eyes? A. Well, when amidone is used the pupils are contracted and pinpointed like heroin. MR. GARFINKLE: There again—— THE COURT: That may go out. Officer, you are not to make any comparison with heroin. These defendants are not on trial for heroin and do you understand what I said? THE WITNESS:

Yes.'' Later the officer said he had formed the opinion that defendants were under the influence of some narcotic and was asked: ''Q. BY MR. DANIELS: What physical symptoms formed the basis of that opinion?'' His answer was: ''Well, the first thing, like I previously stated, their eyes were both drooping and their heads nodding. There were physical symptoms. Another thing, when I looked at their eyes, both of their eyes, of both defendants, appeared to be pinpointed and after an examination of their arms, they both had several, what appeared to be recent hypo needle marks.'' Motion was then made to strike all the officer's testimony because of lack of proof of probable cause. The court denied the motion saying: ''Now that motion will be denied but I want this witness instructed to make no further reference to heroin. If I hear another one, I am going to declare a mistrial. I think it has been deliberate misconduct on his part. I am not talking about you, but this idea of the officer trying to get up and gild the lily is one thing I don't like. MR. DANIELS: I would like to say this. Part of the conversation that the officers had with this man was concerning heroin. THE COURT: I am not talking about the conversation. I am talking about other things, see, and another voluntary reference, if there is a motion from counsel, I will entertain it.''

It appears that the officer's original opinion was that defendants were under the influence of heroin and that defendant Mirosnik had the same understanding for he referred to the contents of the balloons as heroin when denying any connection with same. So there was a basis in the record for a claim that defendants were in possession of heroin rather than any other narcotic such as amidone. The prosecutor was engaged in a bona fide effort to show that the content of the balloons had the appearance of heroin but was in fact amidone as charged in the information. We find nothing in the record to indicate that he was trying to evade the rulings of the court or was deliberately and baselessly injecting heroin into the record for the purpose of prejudicing the defendants. Whatever the judge may think about heroin as compared with other forms of narcotics it remains true that the statute (Health & Saf. Code, § 11001) places them on a parity so far as unlawfulness of possession and penalty for possession are concerned. (Health & Saf. Code, § 11500.)

It is doubtful whether the naming of amidone in the information was a necessary part of it. (Cf. *People* v. *Britton*, 6 Cal.2d 1, 5 [56 P.2d 494]; *People* v. *Roberts*, 40 Cal.2d 483,

486 [254 P.2d 501] ; *People* v. *Randazzo,* 48 Cal.App.2d 484, 489 [310 P.2d 413] ; *People* v. *Burch,* 196 Cal.App.2d 754, 764 [17 Cal.Rptr. 102].) As was said in *Britton, supra,* at page 5: "It is well settled in this state that an indictment or information need not allege the particular mode or means employed in the commission of an offense, except when of the essence thereof. [Citation.] In other words, particulars as to manner, means, place or circumstances need not in general be added to the statutory definition. [Citations.] The indictment or information need only charge the essential elements of the statutory offense. It then fairly apprises the defendant of what he is to meet at the trial."

In *Roberts, supra,* at page 486: "Notice of the particular circumstances of the offense is given not by detailed pleading but by the transcript of the evidence before the committing magistrate (or the grand jury) ; defendant is entitled to such transcript under section 870 (or section 925) of the Penal Code."

It would seem that a variance by proof of possession of heroin rather than amidone would have been an immaterial one (cf. Fricke on California Criminal Procedure (5th ed.) pp. 398-400, 403).

We perceive no basis for sustaining the claim of misconduct on the part of the deputy district attorney.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1963.