Filed 9/12/13  P. v. Martinez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B243702 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA096967) |
| v. | |
| PEDRO MARTINEZ, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, George Genesta, Judge.  Reversed in part, affirmed in part and remanded with directions.

Katharine Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

Pedro Martinez, Jr., appeals from the judgment entered following a jury trial in which he was convicted of evading an officer with willful disregard (Veh. Code, § 2800.2), the unlawful driving or taking of a vehicle (Veh. Code, § 10851), possessing methamphetamine for sale (Health & Saf. Code, § 11378), transporting methamphetamine (Health & Saf. Code, § 11379), possessing methamphetamine while armed with a loaded, operable firearm (Health & Saf. Code, § 11370.1), being a felon possessing a firearm (Pen. Code, § 29800),[1] being a felon carrying a loaded firearm in a vehicle on a public street (§ 25850), and being a felon possessing ammunition (§ 30305).[2] The jury made true findings with respect to counts 1 through 4 that a principal was armed with a firearm (§ 12022, subd. (a)(1)) and that in counts 3 and 4 appellant was personally armed with a firearm (§ 12022, subd. (c)).

Appellant stipulated to and admitted the prior conviction alleged as proof he was a felon in counts 6, 7, and 10. He had a bifurcated court trial on the other alleged prior conviction enhancements. The trial court made findings appellant had two convictions of a violent or serious felony constituting strikes pursuant to the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and that appellant had six prior convictions for which he had served separate prison terms (§ 667.5, subd. (b)).

The trial court denied appellant's motion pursuant to *People v. Superior Court* (*Romero*) 13 Cal.4th 497 (*Romero*) to strike the prior convictions qualifying him as a third-strike offender. The trial court sentenced appellant pursuant to the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subd. (a)-(d)) to six consecutive terms in state prison of 25 years to life, or 150 years to life.

---

[1]  All further statutory citations are to the Penal Code unless otherwise indicated.

[2]  The above offenses were charged in the same order in the information, respectively, as counts 1 through 7 and count 10. The jury verdict forms designated count 10 as a "count 8" for purposes of avoiding jury confusion over the absence in the information and verdict forms of a count 8 and a count 9.

2

## BACKGROUND

1. *The trial evidence.*

Appellant makes no claim of insufficient evidence to support the judgment. Nevertheless, his sentencing contentions require reference to the trial evidence. Thus, we have set out the trial evidence in some detail, as follows.

Viewed in the light most favorable to the judgment (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the trial evidence established that on February 14, 2012, two Covina police officers working, Officers Mario Corona and Frank Medina, were stopped in Covina at a red stop light. They were driving a detectives' vehicle, a Crown Victoria, which was gray in color with red, amber and blue police lights and a siren. A red light was affixed inside the Crown Victoria's window facing forward at the rear view mirror. The officers were dressed in police uniforms consisting of polo shirts and jeans. Printed on the back of their shirts was "Covina Police Department." The shirts also bore police department patches on the shoulders, and the officers were wearing shoulder radios and displaying their badges. On their belts, they carried the usual police equipment, such as handcuffs, etc.

At the light, appellant stopped next to the officers in a 1999 white Honda. He had a female passenger.

Officer Corona observed that the Honda had tinted windows, and its driver, appellant, was not wearing a seat belt. When the light turned green, Officer Corona turned on the Crown Victoria's red front light and signaled the Honda to pull over. The Honda stopped at the curb. When Officer Medina approached the driver's window and asked for a driver's license and registration, appellant replied he had no driver's license and sped off.

Thereafter, appellant led the officers on a high speed, 5- to 6-minute, 4.1-mile pursuit. During the pursuit, Officer Corona turned on the Crown Victoria's lights and siren. Partway through the pursuit, a black and white police vehicle, driven by a Covina police officer, took the lead position behind the Honda. That officer turned on the black

3

and white police vehicle's lights and siren.  Appellant did not respond to that vehicle's lights and siren and pull over and stop.  During the pursuit, appellant ran at least two red lights, ran stop signs, sped through residential streets at 55 miles per hour and more, careened around corners, hit a mailbox and came dangerously close to colliding with several other motorists.  The latter part of the pursuit was captured by the black and white police vehicle's onboard video recorder and shown to the jury at trial.

At one point during the pursuit, appellant drove the Honda into oncoming lanes and almost hit an oncoming vehicle.  Then, he corrected back into his lane and dropped a black bag out the driver's window.  A third police officer stopped his police vehicle and retrieved the bag.  The bag contained one large Ziploc bag and two smaller baggies full of a white crystalline substance.  A chemist testified at trial that in all, the baggies contained 33.7 grams of methamphetamine.  Inside the bag, the officers also found a digital scale, a torch lighter, two glass "meth" pipes with burnt residue, scraping tools, a Smith and Wesson nine-millimeter handgun with a magazine and chamber full of hollow tip bullets, and a sock containing ball tip nine-millimeter ammunition, as well as empty baggies of varying sizes.

Appellant only stopped the Honda when all its tires went flat.  Appellant was arrested.  In appellant's coin pocket, the officers found a small plastic bindle containing white crystalline powder, probably methamphetamine, and four pills.  The officers found two prescription pill vials in the glove box of the Honda, two more prescription pill vials in a laptop bag sitting on the backseat, and several empty one-inch by one-inch baggies and empty pill vials in the Honda's console.  There was an additional quantity of 4.32 grams of methamphetamine found on appellant's person or in the Honda.

The officers ran the VIN number on the Honda.  In December 2011, it had been stolen from a local shopping center.  When the owner retrieved the Honda from the tow yard after its recovery, she found a "shaved" key in its ignition.  None of the pill vials or drug paraphernalia in the Honda belonged to her.

4

The officers discovered the license plate on the Honda was registered to appellant. Officer Corona opined the methamphetamine was possessed for sale.

After a *Miranda* waiver (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694]), appellant told Officer Corona that he was unaware the Honda had been stolen. He explained he had a key, and "Chris," for whom he would not provide any locating information, purportedly gave him the Honda for $700 in cash and the forgiveness of a drug debt. Later, Chris wanted appellant to return the Honda to him, but appellant refused. Thereafter, Chris stole the license plates on the Honda, and appellant replaced them with license plates appellant had obtained from another vehicle he owned. Appellant said that he had been driving the Honda for about a month.

During his statement to Officer Corona, appellant acknowledged he was carrying about five to six grams of methamphetamine inside the black bag, which he was transporting on the Honda's back seat. He asserted he had purchased the handgun for $20 a couple of days earlier and was contemplating selling it. Officer Corona asked why appellant had the firearm, inquiring whether appellant's motive was to fend off enemies or because he was paranoid after using drugs. Appellant replied he had the firearm because the drugs made him paranoid. The officer asked why appellant drove off and led the police on a pursuit when the officers stopped him. Appellant replied he believed the officers were going to stop him for loud music and he did not want to go to jail.

2. *The sentencing proceedings.*

The probation report and section 969b packages demonstrated that in 1998, in case No. KA042869, appellant was convicted of evading (Veh. Code, § 2800.2) and granted probation. In 2000, in case No. GA043363, he was convicted of possessing marijuana for sale and felon possessing firearm cases and committed to state prison not only for case No. GA043363, but also for case No. KA042869. Later, he violated the conditions of his parole and was returned to state prison to finish his term. In 2002, in case No. KA058251, he was convicted of possessing dangerous drugs and felon possessing a firearm and sentenced to state prison. Again, he violated parole and was

5

ordered to finish his term. In 2003, in case No. KA064150, he was convicted of possessing dangerous drugs and granted Proposition 36 probation. In 2004, probation was revoked, and he was committed to state prison. The section 969b prior prison package established that in 2007, in case No. C211873, in Clark County, Nevada, he pled guilty to battery with a deadly weapon with substantial bodily harm and was committed to prison. In 2010, in case No. INF066371, in Riverside, he was convicted of assault with a knife and committed to state prison. When he committed the current offenses, he was on parole.[3]

The probation officer stated in his report that appellant's parole officer informed him that during the current grant of parole, appellant was totally noncompliant.

Prior to sentencing, appellant filed a motion pursuant to *Romero*, *supra*, 13 Cal.4th 497, requesting the trial court strike his two qualifying prior convictions and sentence him to something less than the 25-years-to-life terms, asserting the facts underlying his prior convictions were mitigating. With respect to his 2007 Nevada conviction, appellant asserted he had been allowed to plead to a reduced charge after he acted in self defense in shooting a Hell's Angel gang member in the buttocks. The shooting had occurred when Hell's Angels gang members confronted the rival Mongols Motorcycle Club members in a Nevada casino. At that time, appellant was a member of the Mongols Motorcycle Club.

---

[3]    In the probation report, the probation officer cited no mitigating factors and the following aggravating factors: (1) his prior convictions are numerous and of increasing seriousness; (2) he has served prior prison terms; (3) he was on parole when he committed the instant offenses; and (4) his prior performance on probation or parole were unsatisfactory. The People's Sentencing Memorandum asserted further aggravating factors: (1) The crime involved a a threat of bodily harm as appellant drove erratically through the streets of Covina, exposing others to harm; (2) he was armed with a loaded nine-millimeter handgun when stopped by the officers; (3) he induced his passenger to be involved in the chase; and (4) he has engaged in a pattern of violent conduct indicating he is a danger to society.

His other qualifying conviction for felonious assault with a knife arose from a dispute with security personnel at a Palm Desert bar. He claimed another bar patron had confronted him about his membership in a gang with a knife, and appellant disarmed the man. Appellant was escorted out of the bar by security personnel. He was accused of unfolding a knife in the presence of the security personnel as he was escorted out of the bar. He asserted the evidence of guilt was conflicting, and he only pled guilty because there were many postponements and he was appointed six different lawyers. He implied that he was worn down by the delay and finally accepted the plea bargain offered by the People.

In the motion to strike, appellant claimed the sources of his difficulties were addiction and membership in the motorcycle club, a membership he had long since resigned. He claimed he has a kind heart and the potential to be a law-abiding citizen. His family was supportive, but he had continued to engage in poor decision-making due to his addiction. He asked for a another chance to become law-abiding.

The trial court read and considered the motion to strike and denied it. The trial court said the following. Appellant had had numerous opportunities since 1998 to address his issues, substance abuse and the character weaknesses that "get him in trouble." This was not the first time he had committed evading and felon possessing a weapon offenses. Since 1998 he had been in and out of prison numerous times, each time obtaining a relatively light sentence for a new conviction but then again violating the law or his probation or parole and returning to state prison.

The trial court expressed its opinion that the plea bargains appellant had been offered were grants of leniency that were not necessarily supported by the underlying facts of the cases. Appellant's current misconduct, particularly with respect to the evading, was aggravated. Appellant had caused $2,500 of uninsured expenses to the victim's Honda. During his lifetime, appellant had been unable to successfully complete even one grant of probation or parole. He was a "man out of control." The trial court refused to strike the qualifying prior convictions as it was not in the interests of justice.

7

The trial court inquired whether there were any further comments from the parties. It commenced sentencing. It ordered the principal armed and personally armed enhancements in counts 1 through 4 stricken. The trial court commented it was concerned that otherwise, it would have to impose and stay several of the counts 1 through 4 pursuant to section 654. To avoid shortening appellant's total term of imprisonment, the trial court had decided to merely strike the armed with a firearm enhancements.

The trial court imposed 25-year-to-life prison terms consecutively for all eight convictions. It determined that section 654 required the imposition and stay of consecutive prison terms imposed for counts 5 and 7, respectively, possessing methamphetamine while armed with a firearm and being a felon carrying a loaded weapon in a vehicle on a public street. It made true findings as to the alleged service of prior separate prison term enhancements and ordered execution of the one-year terms for these enhancements stayed. The total term imposed was 150 years to life.

After the trial court completed sentencing, it said: "I take no great pride in terms of the sentencing and the amount of years being imposed. But, sir, you have been a danger to society -- what you did and continue to do in terms of not only driving a stolen vehicle, being armed, having ammunition and being involved in the drug trade, it's a wonder that someone has not been seriously injured or died as a result of your conduct."

## CONTENTIONS

1. *Section 654.*

Appellant contends the evidence demonstrates only one criminal intent and objective -- all the offenses were directed to his engagement in a scheme to sell methamphetamine -- and consequently, the trial court properly could punish him only once, for possessing methamphetamine for sale.

8

a. *The applicable law.*

Section 654, subdivision (a), provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

This provision prohibits multiple punishment for a single physical act that violates different provisions of law.  (*People v. Jones* (2012) 54 Cal.4th 350, 358.)  "[W]hat is a single physical act might not always be easy to ascertain.  In some situations, physical acts might be simultaneous yet separate for purposes of section 654," such as " 'the simultaneous possession of different items of contraband,'. . .'the possession of one item . . . not [being] essential to the possession of another separate item.' " (*Ibid*.)  " 'Few if any crimes, however, are the result of a single physical act.  "Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." [Citation.]' [Citation.]" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208 (*Latimer*), quoting *Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*).)

" 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*Latimer, supra*, 5 Cal.4th at p. 1208.)[4]

---

[4]      Recently, the California Supreme Court imposed a limitation on the language contained in footnote 1 of *Neal, supra*, 55 Cal.2d 11, in *People v. Correa* (2012) 54 Cal.4th 331 (*Correa*), at pages 336 and 341, and *People v. Sanders* (2012) 55 Cal.4th 731, at pages 736-744.  These cases held that section 654 does not bar multiple violations of the same criminal statute, e.g., section 654 does not bar punishment where the actor is punished multiple times for each possession of a firearm where it is prosecuted under the

" 'The question whether the defendant entertained multiple criminal objectives is one of fact for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them. [Citations.]' [Citations.]" (*People v. Akins* (1997) 56 Cal.App.4th 331, 339.)

b. *Discussion.*

The trial court erred by punishing appellant for both the count 3 possessing methamphetamine for sale and the count 4 transporting methamphetamine. There is ample authority that where a police officer discovers a defendant in an automobile possessing such a quantity of a controlled substance it is possessed for sale, the act of transporting the controlled substance and its possession for sale are not separately punishable. (*People v. Correa, supra*, 54 Cal.4th at p. 340 [citing as an example *People v. Roberts* (1953) 40 Cal.2d 483, 491, where court on appeal found possession, sale and attempt to transport heroin constituted only one criminal act]; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583 [the Attorney General concedes trial court error where possession for sale and transporting methamphetamine are separately punished]; see *People v. Tinker* (2013) 212 Cal.App.4th 1502, 1506 [possession for sale offense arose out of same facts and circumstances as the transportation offense where defendant was stopped in the van he was living in and officer found $30,000 worth of methamphetamine on his person and in the van]; *People v. Thomas* (1991) 231 Cal.App.3d 299, 306-307 [court ordered one of two offenses, the transportation of

---

same statute. In *People v. Jones, supra*, 54 Cal.4th 350, the Supreme Court clarified that section 654 precludes multiple punishment for two of three former sections 12021, 12025 and 12031 offenses where the defendant, a felon, is discovered driving a car containing one loaded, concealable firearm and there is no evidence adduced at trial of an antecedent possession, nor does the information allege an antecedent possession. In *Jones*, the court disapproved the "different public purposes directed at distinct evils" test found in *In re Hayes* (1969) 70 Cal.2d 604, 611. (*People v. Jones*, at p. 356.) The decision in *Neal* is not overruled insofar as it sets forth the intent and objective test for determining section 654's application.

cocaine base and its possession, stayed where officers had discovered defendant carrying cocaine in an automobile in his possession].)

In the instant case, the punishment for the count 4 transportation offense will be ordered stayed, resulting in a reduction in the total term from 150 years to life to 125 years to life.

Substantial evidence, however, supports the trial court's other implied findings of separable intents and criminal purposes for the offenses of evading, the unlawful driving or taking of a vehicle, possessing methamphetamine for sale, being a felon possessing a firearm and being a felon possessing ammunition.

Even if appellant had no hand in the taking of the Honda from a local shopping center two months earlier, by his own admission, he had been driving the Honda for at least a month. The trial court was entitled to conclude from appellant's *Mirandized* statement that appellant committed an antecedent count 2 driving and taking offense, apart from any specific use he made of the Honda on February 14, 2012, in possessing and transporting the methamphetamine.

Appellant told Officer Corona that he committed the evading offense to avoid going to jail. The flight to avoid a custody arrest evidences a different criminal intent and objective than those involved in driving and taking the stolen Honda and possessing the methamphetamine, the nine-millimeter loaded weapon and the sock of ball point bullets. (See *People v. Jones, supra*, 54 Cal.4th at p. 358 [discussing separable criminal acts in possession cases]; cf. *People v. Butler* (1986) 184 Cal.App.3d 469, 471-474 [two criminal acts present where the defendant was charged with felony hit and run and vehicular manslaughter].) The trial court did not err in finding that the evading offense was separately punishable.

Appellant admitted he had purchased the nine-millimeter handgun one or two days prior to arrest and mentioned he contemplated selling it shortly thereafter. He told Officer Corona that he had acquired the gun, not to protect himself while engaged in the drug trade, but because the methamphetamine made him paranoid. Thus, here, the record

11

contains evidence of both an antecedent commission of the offense and a purpose for possessing the firearm that was not connected to promoting appellant's drug dealing. " '[W]here the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.' " (*People v. Bradford* (1976) 17 Cal.3d 8, 22; see also, *People v. Jones* (2002) 103 Cal.App.4th 1139, 1141-1142, cited with approval in *People v. Jones, supra*, 54 Cal.4th at p. 358, fn. 3 [when an ex-felon commits a crime using a firearm, and arrives at the crime scene already in possession of the firearm, it may reasonably be inferred the firearm possession is a separate and antecedent offense, carried out with an independent, distinct intent from the primary crime].)

Similarly, it is well established the " 'simultaneous possession of different items of contraband' " constitute separate criminal acts for purposes of section 654. (*People v. Jones, supra*, 54 Cal.4th at p. 358.) Thus appellant's count 10 conviction for being a felon possessing ammunition is separable from the count 6 offense being a felon possessing a firearm. Possession of the ammunition appears to be antecedent to getting into the car that day, and further, the nine-millimeter handgun was loaded with hollow-point bullets, not the ball point bullets contained in the sock, the ammunition in the sock being the item in question in count 10. (Cf. *People v. Lopez* (2004) 119 Cal.App.4th 132, 138 [court ordered unlawful possession of ammunition count stayed where the bullets in question were loaded inside the firearm which provided the basis for the section 12021, felon in possession of a firearm, offense].) Possessing the ball point bullets was separately punishable.

2. *Three strikes consecutive sentencing.*

Appellant contends the trial court misunderstood its discretion to impose concurrent sentences for the various offenses and should have imposed concurrent terms after making an appropriate statement of reasons.

We will vacate the orders imposing consecutive terms of imprisonment and remand to the trial court for an appropriate exercise of discretion.

        a. *The applicable law.*

"The three strikes law is a comprehensive, integrated sentencing scheme that applies to all cases coming within its terms." (*People v. Caspar* (2004) 33 Cal.4th 38, 41 (*Caspar*).) As a general rule, consecutive sentencing is mandatory under that scheme. (§ 1170.12, subds. (a)(6) & (a)(7).)[5] The trial court retains discretion to impose concurrent or consecutive terms only when the current felony convictions are "committed on the same occasion" and "arise [from] the same set of operative facts." (*Caspar,* at p. 41.)

In *People v. Lawrence* (2000) 24 Cal.4th 219, at page 233 (*Lawrence*), the court said the following: "If there are two or more current felony convictions 'not committed on the same occasion,' i.e., not committed within close temporal and spacial proximity of one another, *and* 'not arising from the same set of operative facts,' i.e., not sharing common acts or criminal conduct that serves to establish the elements of the current felony offenses of which defendant stands convicted, then 'the court shall sentence the defendant consecutively on each count' pursuant to subdivision (c)(6)." (Italics in original.)

_____

[5]    Section 1170.12, subdivision (a)(6), provides, as follows: "If there is a current conviction for more than one felony count not *committed on the same occasion*, and *not arising from the same set of operative facts*, the court shall sentence the defendant consecutively on each count pursuant to this section." (Italics added.)

Section 667, subdivision (c)(6), sets out an almost identical provision and similarly provides for only limited concurrent sentencing after a three strikes conviction. Subdivision (a)(7) of section 1170.12 requires mandatory consecutive sentencing where the current felony is a violent or serious felony. The latter subdivision is not at issue here.

"The phrase 'committed on the same occasion' is commonly understood to refer to at least a close temporal and spatial proximity between two events . . . . " (*Lawrence*, *supra*, 24 Cal.4th at p. 226, citing *People v. Deloza* (1998) 18 Cal.4th 585, 594 (*Deloza*), italics omitted.)  For example, different offenses committed at different locations blocks away and minutes later involving different victims are not committed on the same occasion.  (*Lawrence,* at pp. 229, 234.)

The term "operative facts" refers to "the facts of a case which prove the underlying current charged offense."  (*Lawrence, supra*, 24 Cal.4th at p. 231.) Whether two or more offenses arise from the same set of operative facts is determined by examining an offense's "continuous nature, its elements and the facts used to support those elements. . . .  If another offense is committed while the facts underlying [the offense] are unfolding, [those offenses] will necessarily arise from the same set of operative facts as the original [crime].  However, where the elements of the original crime have been satisfied, any crime subsequently committed will not arise from the same set of operative facts underlying the completed crime; rather such crime is necessarily committed at a different time."  (*Id.* at p. 232.)  Not " 'arising from the same set of operative facts' " suggests the offenses do not share "common acts or criminal conduct that serves to establish the elements of the current felony offenses of which defendant stands convicted. . . ."  (*Id.* at p. 233.)  And there may be other factors found to be relevant in the future that assist a trial court in determining whether the imposition of concurrent terms is within its discretion.  (*Ibid.*)

Issues of the application of "[s]ection 654 [are] irrelevant to the question of whether multiple current convictions are sentenced concurrently or consecutively under the three strikes law."  (*Lawrence, supra,* 24 Cal.4th at p. 226, citing *Deloza, supra*, 18 Cal.4th at p. 594.)  That is "because section 654 does not allow any multiple punishment, whether concurrent or consecutive, and the analyses performed under the two statutes are entirely separate."  (*Ibid.*, italics omitted.)

14

b. *The Analysis.*

(1) *Forfeiture.*

The Attorney General points out the issues raised by appellant were forfeited by trial counsel's failure to object in the trial court. We agree. The consecutive terms imposed were not unauthorized. It is settled a trial court's failure to make or to articulate its discretionary sentencing choices is forfeited on appeal if it is not raised in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 353-354.) However, appellant also makes a secondary claim of constitutionally ineffective assistance of trial counsel. He argues trial counsel had no possible strategic reason for failing to bring to the trial court's attention its failure to determine whether concurrent terms were appropriate and to urge concurrent imprisonment.

To forestall the claim of ineffective assistance of trial counsel, we will dispose of the contention on the merits. (*People v. Scaffidi* (1992) 11 Cal.App.4th 145, 151, fn. 2 (*Scaffidi*).)[6]

(2) *Discussion.*

Appellant argues the trial court had discretion to impose concurrent terms of punishment. We agree. The information alleged that all the offenses occurred on February 14, 2012, the day appellant was stopped by the officers and arrested. There was no allegation in the information that, for example, the driving and taking offense occurred

---

[6]    The court in *Scaffidi* explains that the test for ineffective trial counsel set out in *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693-699] (*Strickland*) involves two prongs: (1) to determine whether counsel failed to give reasonably effective assistance, and (2) to determine whether it is reasonably probable that a different outcome would have resulted had the attorney acted competently. It further observed, "However, 'there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " (*Scaffidi, supra*, 11 Cal.App.4th at p. 151, fn. 2, citing *Strickland,* at p. 697.)

over the prior month as appellant had claimed in his statement to Officer Corona. And the driving and taking offense and the possession of contraband offenses were continuously occurring not merely on a prior date but were being committed until appellant threw out the black bag or stepped out of the Honda. Thus, we conclude the possessing of the firearm, the ammunition and the methamphetamine were not completed but were ongoing until such time as appellant attempted to rid himself of the items by throwing them out the Honda's window. At least with respect to these items and the unlawful driving offense, all these offenses occurred on the same occasion and arose from the same operative facts.

However, the evading offense should be treated differently. It did unfold in a technical sense while the unlawful driving and possession offenses were ongoing. But it did not truly occur at the same time, suggesting that spacially and temporally, the five offenses were ongoing at the same time. Appellant did not commit the evading offense until he realized his lack of a driver's license made a custody arrest likely and the police would discover his illegal activities. At that point, he committed a new and separate offense in the effort to avoid apprehension for driving the car and the possession offenses. While part of the pursuit occurred simultaneously with the commission of the other offenses, for all practical purposes, when appellant decided to flee from the police, his other offenses were completed. The evasion offense might be regarded as occurring on the same occasion, but its operative facts were separable from the other offenses.

It is possible that the trial court here exercised its discretion but found the consecutive terms to be appropriate. However, the decision in *Deloza, supra*, 18 Cal.4th 585, at page 596, footnote 8, requires that once the trial court determines whether it retains discretion to impose consecutive or concurrent terms, it must comply with California Rules of Court, rule 425, and use its criteria to exercise discretion.[7]

---

[7] California Rules of Court, rule 425, has been renumbered as rule 4.425, and sets forth the relevant criteria generally for imposing consecutive or concurrent terms.

16

Concurrent or consecutive sentencing was not discussed at sentencing. Without the appropriate statement of reasons justifying a sentencing choice as to consecutive terms, we can only conclude the trial court improperly determined the sentences had to be imposed consecutively and thus never exercised its discretion as to whether concurrent terms were warranted.

An appropriate objection and request for concurrent sentencing would have alerted the trial court it retained discretion to impose concurrent or consecutive terms. It is reasonably probable appellant might have achieved a slightly better result if the trial court had believed it could impose one or more concurrent terms. Consequently, we will vacate the order sentencing appellant to consecutive terms of punishment and remand the matter to the trial court for it to resentence appellant and exercise its discretion pursuant to section 1170.12, subdivision (a)(6).

3. *The Section 667.5, Subdivision (b), Enhancements*.

Appellant contends there was error in imposing two section 667.5, subdivision (b) enhancements for case Nos. GA043363 and KA042869.

The trial court found true that appellant had served six separate prison terms for a felony in case Nos. KA042869, GA043363, KA058251, KA064150, C211873, and INF066371. Later, it ordered "sentencing" on the one-year terms for these enhancements "stay[ed]."

The Attorney General concedes the error, and we agree appellant served only one separate prison term for case Nos. GA043363 and KA042869. (*People v. Riel* (2000) 22 Cal.4th 1153, 1203; *People v. Jones* (1998) 63 Cal.App.4th 744, 747 [concurrent sentences do not result in two separate prison terms served pursuant to § 667.5, subd. (b)].)

Consequently, as the evidence only supports five of the six findings of the service of a prior prison term for a felony, this court will order the enhancement for case No. GA043363 stricken.

17

4. *Staying the Sentence for the Separate Prison Term Enhancements.*

With respect to the remaining section 667.5, subdivision (b), service of prior separate prison term enhancements, appellant contends that at sentencing, the trial court improperly "stayed," in lieu of striking, these consecutively-imposed one-year enhancements.

In sentencing appellant, the trial court said, "It is the court's intention also to stay the sentencing on his prison priors, which are four in addition to the [two] strike priors." The trial court's minutes state the trial court ordered an additional one-year fully consecutive term for each of the six prison term priors and stayed the execution of sentence for those enhancements. The abstract of judgment indicates the terms imposed were ordered "stayed."

The proper way to achieve the trial court's intention to grant appellant some leniency with respect to these enhancements is to order them stricken. "Once the prior prison term is found true within the meaning of section 667.5, [subdivision] (b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken." (*People v. Langston* (2004) 33 Cal.4th 1237, 1241. "The failure to impose or strike an enhancement is a legally unauthorized sentence subject to correction for the first time on appeal. [Citations.]" (*People v. Bradley* (1998) 64 Cal.App.4th 386, 391-392 (*Bradley*).)

As we must remand for resentencing in any event, we will also order that if the trial court wishes to strike these enhancements on resentencing, it comply with the proper procedure as it is set out in *Bradley, supra*, 64 Cal.App.4th at pages 391 to 392. Consequently, we vacate its order "staying" the execution of the terms for the enhancement and remand for an appropriate statement of reasons indicating why its order is justified within the meaning of section 1385, subdivision (a).

18

## DISPOSITION

The orders imposing consecutive terms of imprisonment and staying, in lieu of striking, the section 667.5, subdivision (b) enhancements are reversed. The matter is remanded to the trial court with directions to stay the execution of the term imposed for the transportation of methamphetamine in count 4, the stay to become permanent upon appellant's completion of the terms imposed for the remaining counts. On remand, the trial court shall also exercise its discretion with respect to consecutive sentencing in conformity with section 1170.12, subdivision (a)(6), and with respect to striking the section 667.5, subdivision (b) enhancements. If it exercises its discretion to grant appellant some leniency, it should make a statement of reasons as required by section 1385, subdivision (a). The trial court may also reconsider its entire sentence in a manner consistent with this opinion.

In all other respects, the judgment is affirmed.

The superior court shall have its clerk prepare and send to the Department of Corrections an amended abstract of judgment reflecting the modified judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

KITCHING, J.

19